27 F.3d 823
 63 USLW 2024
 NYSA-ILA MEDICAL AND CLINICAL SERVICES FUND, By Its
Trustees, John BOWERS, James Capo, Frank Lonardo, William P.
Lynch, M. Brian Maher, James P. Melia, Gerald Owens, and
Peter Vickers, Plaintiffs-Appellants,
v.
David AXELROD, M.D., in his capacity as New York State
Commissioner of Health; Lorna H. McBarnette, in her
capacity as New York State Executive Deputy Commissioner of
Health; Steven C. Anderman, in his capacity as Deputy
Director, Division of Health Care Financing, Office of
Health Systems Management, New York State Department of
Health, Defendants-Appellees.
 No. 1294, Docket 93-7221.
 United States Court of Appeals,
Second Circuit.
 Argued March 10, 1994.
Decided June 23, 1994.
 
 Donato Caruso, New York City (C. Peter Lambos, Lambos & Giardino, Thomas W. Gleason, Ernest L. Mathews, Jr., Kevin Marrinan, Gleason & Mathews, of counsel), for plaintiffs-appellants.
 Jane Lauer Barker, Asst. Atty. Gen., New York City (G. Oliver Koppell, Atty. Gen. of the State of New York, of counsel), for defendants-appellees.
 Before WALKER and JACOBS, Circuit Judges, and ZAMPANO, District Judge.*
 WALKER, Circuit Judge:
 
 
 1
 The Trustees of NYSA-ILA Medical & Clinical Services Fund (the "Fund") brought this suit seeking a declaration that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Sec. 1001 et seq., preempts New York Public Health Law Sec. 2807-d to the extent the latter provision taxes contributions and other payments for health care benefits received by two medical centers operated by the Fund. The Fund now appeals from a judgment of the United States District Court for the Southern District of New York (John S. Martin, Jr., Judge ) holding that ERISA does not preempt the state tax and granting summary judgment to defendant state health care officials. We reverse.
 
 BACKGROUND
 
 2
 The Fund is an ERISA-regulated multiemployer, labor-management trust fund established through collective bargaining to administer an employee welfare benefit plan that provides medical, dental, and other health care services to ERISA plan participants, consisting primarily of longshore workers, and their dependents. The Fund provides these health care benefits through three medical centers that it owns and operates, two in New York and one in New Jersey. The centers provide treatment exclusively to plan participants and beneficiaries.
 
 
 3
 In 1990, the State of New York enacted a Health Facility Assessment ("HFA"), which imposed a tax on the gross receipts from patient care services and general operations of all hospitals in New York State. N.Y.Pub.Health Law Sec. 2807-d. The HFA was enacted to help eliminate the State's budget deficit for the 1990-91 fiscal year. The HFA became effective January 1, 1991, and was supposed to expire on April 1, 1992, but has subsequently been amended to remain in force on and after that date. 1992 N.Y.Laws, ch. 41, Secs. 54, 163. The HFA applies to a wide range of medical facilities, including diagnostic and treatment centers such as the medical centers operated by the Fund. N.Y.Pub.Health Law Sec. 2801(1). The amount of the assessment, which varies by type of facility, is six-tenths of one percent for the Fund's medical centers. Id. Sec. 2807-d(2)(c). For purposes of the assessment, "gross receipts" are defined as "all monies received for or on account of hospital and health related services" with only limited exceptions. Id. Sec. 2807-d(3)(c).
 
 
 4
 The Fund's medical centers receive income from a variety of sources. The bulk of their costs are covered by employer contributions remitted to the Fund which are then transferred to the centers on an as-needed basis to pay for the centers' payroll and other operating expenses. However, the centers obtain additional revenue from certain employer payments made directly to the centers, employee co-payments, other fee-for-service payments, patient registration fees, payments from workers' compensation carriers, and such miscellaneous sources as the sale of scrap or waste, fees for reproducing medical records, and supplier rebates. For the period from January 1, 1991 to November 30, 1991, the Fund's two New York medical centers reported combined assessable income of $1,177,670 and paid assessments totalling $7,066. The Fund discontinued filing HFA reports with the New York State Department of Health after November 1991 and has paid no assessments since that time.
 
 
 5
 The medical centers did not include in their assessable income monies transferred from the Fund to the centers, and the State defendants have not contested the exclusion of these payments in this case. However, the question of whether monies transferred from the Fund to the centers are assessable has never, to our knowledge, been litigated or definitively resolved. Since early 1992, the Fund has restructured its payment procedures so that certain employer contributions and registration fees that were formerly paid directly to the medical centers are now remitted to the Fund itself. The Fund believes that this restructuring avoids the effect of the HFA, but is unwilling to redirect to the Fund all payments now received by the medical centers until this case has been decided.
 
 
 6
 The Fund instituted this suit in April 1992 asserting that ERISA preempts the HFA insofar as it imposes a levy on contributions and payments for health care benefits provided by the Fund. The Fund does not challenge imposition of the HFA on the centers' miscellaneous revenue earned from activities unrelated to the health care services provided to participants and beneficiaries, such as the income derived from the sale of scrap, records reproduction fees, and supplier rebates. The Fund sought declaratory and injunctive relief as well as restitution of a substantial portion of the HFA assessments it had previously paid.
 
 
 7
 On cross-motions for summary judgment, the district court ruled that the HFA is a tax of general application that is not preempted by ERISA because it has only an incidental impact on ERISA plans. The district court reasoned that the minimal tax imposed by the HFA "is not great enough to pose a serious economic threat to the plan which might trigger preemption." NYSA-ILA Medical & Clinical Servs. Fund v. Axelrod, 92 Civ. 2279 (JSM), slip op. at 8 (S.D.N.Y. Feb. 18, 1992). Accordingly, the district court entered judgment dismissing the action and this appeal ensued. We review the district court's decision de novo. See Westinghouse Elec. Corp. v. New York City Transit Auth., 14 F.3d 818, 821 (2d Cir.1994).
 
 DISCUSSION
 
 8
 ERISA was enacted in 1974 "to promote the interests of employees and their beneficiaries in employee benefit plans," including both pension and welfare plans. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). An "employee welfare benefit plan" is defined in the statute as
 
 
 9
 any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....
 
 
 10
 29 U.S.C. Sec. 1002(1). The parties do not dispute that the Fund qualifies as an employee welfare benefit plan that fulfills its institutional mission by providing medical benefits directly to plan participants and their beneficiaries through Fund-operated medical centers.
 
 
 11
 One of ERISA's main objectives was to eliminate state regulation of employee benefit plans. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990); Shaw, 463 U.S. at 99, 103 S.Ct. at 2901 (quoting legislative history). To accomplish this, Congress enacted an express preemption clause that is "deliberately expansive." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). It provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the law. 29 U.S.C. Sec. 1144(a). The Supreme Court has observed that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw, 463 U.S. at 96-97, 103 S.Ct. at 2900. Preemption thus applies even where a state law was not specifically designed to regulate the terms and conditions of employee benefit plans or does not relate to those subjects covered by ERISA, such as reporting, disclosure, and fiduciary responsibilities. See Ingersoll-Rand Co., 498 U.S. at 137-39, 111 S.Ct. at 481-83; FMC Corp. v. Holliday, 498 U.S. 52, 58-59, 111 S.Ct. 403, 407-08, 112 L.Ed.2d 356 (1990); Shaw, 463 U.S. at 98, 103 S.Ct. at 2900-01. Indeed, even where a state law has no express link to an employee benefit plan, it can be preempted " 'insofar as' the law applies to benefit plans in particular cases." Morgan Guar. Trust Co. v. Tax Appeals Tribunal, 80 N.Y.2d 44, 49, 587 N.Y.S.2d 252, 599 N.E.2d 656 (1992) (quoting Shaw, 463 U.S. at 97 n. 17, 103 S.Ct. at 2900 n. 17).
 
 
 12
 ERISA preemption is not without limitations, however. The Supreme Court has recognized that ERISA preemption will not apply to state laws that "affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. When it announced this limitation, the Court "express[ed] no views about where it would be appropriate to draw the line," id., but it has subsequently observed that this limitation will apply "with many laws of general applicability," District of Columbia v. Greater Wash. Bd. of Trade, --- U.S. ----, ---- n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513 (1992). There are a number of cases that bear out this observation. See, e.g., Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (generally applicable garnishment law not preempted); Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (state law requiring one-time severance payment not preempted); Aetna Life Ins. Co. v. Borges, 869 F.2d 142 (2d Cir.) (state escheat law not preempted when applied to recover unclaimed ERISA plan benefits), cert. denied, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989); see also Matter of Dyke, 943 F.2d 1435, 1447 (5th Cir.1991) (collecting cases). Unfortunately, these decisions have provided no sure method for determining whether the HFA's impact on the Fund is too "tenuous, remote, or peripheral" to trigger ERISA preemption.
 
 
 13
 The State argues that the HFA is a state tax law of general application that affects ERISA plans only incidentally. According to the State, the HFA is no more directed at ERISA plans than laws implementing sales taxes, utility taxes, and gasoline taxes, and should thus be seen simply as a "cost of doing business" within the state. Relying on Mackey and Aetna Life Ins. Co., the State contends that the HFA should not be preempted because it covers ERISA plans only by virtue of the plans' inclusion in a broader class of entities subject to regulation.
 
 
 14
 However, we believe that the HFA is distinguishable from these laws of general application. The HFA does not apply broadly to every sector of society in New York; nor does it apply to the Fund simply because it engaged in certain kinds of activities which any other member of society might engage in, such as purchasing gasoline or paying one's employees. Rather, the HFA targets only the health care industry. Because this industry is, by definition, the realm where ERISA welfare plans must operate, the HFA was bound to affect them. In a case such as the present one where the plan has chosen to provide medical benefits through self-run medical centers, the HFA operates as an immediate tax on payments and contributions which were intended to pay for participants' medical benefits. The HFA thus directly affects the Fund in its principal role as an employee welfare benefit plan. It does not touch the Fund only slightly on the outer limits of its plan activities; it affects the very operations and functions that make the Fund what it is, a provider of medical, surgical, and hospital care to its participants and their beneficiaries.
 
 
 15
 We thus conclude that the HFA "relates to" the Fund and does so in a very direct way. The tax depletes those assets earmarked for the provision of health care benefits and, as a result, will cause the Fund to reduce benefits provided and/or to charge beneficiaries more in the future for benefits received. Both impacts will detrimentally affect the central mission and purpose of the Fund and hence cannot be characterized as remote or tenuous. See Travelers Ins. Co. v. Cuomo, 14 F.3d 708, 720 (2d Cir.1993) ("[T]he surcharges here force ERISA plans to increase either plan costs or reduce plan benefits. Therefore, they have the requisite connection to ERISA."), petition for cert. filed, 62 U.S.L.W. 3625, 1994 WL 82902 (U.S. Mar. 9, 1994) (No. 93-1414); E-Systems, Inc. v. Pogue, 929 F.2d 1100, 1103 (5th Cir.) ("The cost of the plan must therefore increase for the employer and/or employees or the benefits must be adjusted downwards to offset the tax bite. This is the type of impact Congress intended to avoid when it enacted the ERISA legislation."), cert. denied --- U.S. ----, 112 S.Ct. 585, 116 L.Ed.2d 610 (1991).
 
 
 16
 Our decision would remain the same even if we assumed that the Fund could avoid the HFA by restructuring its finances so that funds formerly remitted by plan participants and employers directly to the medical centers would be remitted to the Fund which would subsequently transfer them to the centers. Wholly apart from whether the transmission of assets from the Fund to the centers could be taxed without running afoul of ERISA preemption, an issue we need not and do not decide, such a restructuring would alter the Fund's established method of administration and would require it to implement procedures for its New York facilities that differ from those of its New Jersey facility. Moreover, these changes would not be insignificant since they would affect the Fund's primary means of collecting contributions and paying for benefits. A state law that "relates to" an ERISA plan is not saved from ERISA preemption by the fact that a plan could restructure its operations to avoid the impact of the state law. Requirements under state law that force plans to change their traditional methods of administration or to adopt different methods on a state-by-state basis are features of state regulation that ERISA was designed to prevent. See FMC Corp., 498 U.S. at 59-60, 111 S.Ct. at 408-09; Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 524, 101 S.Ct. 1895, 1906-07, 68 L.Ed.2d 402 (1981); National Carriers' Conference Comm. v. Heffernan, 454 F.Supp. 914, 918 (D.Conn.1978) (Newman, J.). Compare Aetna Life Ins. Co., 869 F.2d at 147 (discounting Fund's complaint that it would need to make administrative and accounting adjustments in order to comply with state escheat law because the impact was not substantial enough).
 
 
 17
 The district court acknowledged that the HFA will directly impact the Fund by leaving less money for benefits, but determined that the magnitude of the impact was too insubstantial to trigger preemption since the tax rate was only .6%. We do not agree with this reasoning. The magnitude of a statute's economic impact on employee benefit plans may enter the analysis where the statute's connection to the ERISA plan is otherwise insufficient for preemption. For example, a real estate gains tax that has only a peripheral connection to ERISA plans may still be subject to preemption if the high rate of tax has a substantial economic impact on a plan. See Morgan Guar. Trust Co., 80 N.Y.2d at 51-53, 587 N.Y.S.2d 252, 599 N.E.2d 656 (ten percent tax on gain from ERISA plan's sale of real property preempted because of direct impact on plan's administration and investment strategy). However, the converse is not true. A statute that "relates to" ERISA plans cannot escape preemption simply because the magnitude of the impact is thought to be insubstantial. Adopting such an approach would contravene the policy that underlies the preemption provision of protecting ERISA plans from state regulation and would open the door to endless litigation about what constitutes a "substantial" impact.
 
 
 18
 Travelers Insurance Co. v. Cuomo, supra, is not to the contrary. In that case, we held that New York surcharges on hospital rates were preempted by ERISA to the extent ERISA plans must pay surcharges. In the course of our analysis, we discussed Judge Martin's opinion in this case without criticizing it. However, we cited it only for the proposition that "a substantial economic impact, standing alone, could be enough to bring ERISA's preemption clause into play." 14 F.3d at 721. We did not endorse--and now expressly refuse to endorse--the converse proposition urged by the State: that a regulation which has a de minimis economic impact on ERISA plans may withstand preemption regardless of what plan operations it affects.
 
 
 19
 For the foregoing reasons, we reverse the judgment of the district court.
 
 
 
 *
 Honorable Robert C. Zampano, United States District Judge for the District of Connecticut, sitting by designation. Judge Zampano retired shortly after oral argument was heard in this case. Accordingly, the appeal was decided by the remaining panel members pursuant to Section 0.14 of the Local Rules of the Second Circuit