The CONNECTICUT HOSPITAL
ASSOCIATION, Plaintiff–
Appellee,

v.

Gwen B. WELTMAN, Acting Commission-
er of the Office of Health Care Access,
and Donald F. Miller, in his official
capacity as Commissioner of the State
of Connecticut Department of Revenue
Services, Defendants–Appellants.

No. 1665, Docket 94–9237.

United States Court of Appeals,
Second Circuit.

Argued March 23, 1995.

Decided Sept. 12, 1995.

Hugh Barber, Asst. Atty. Gen. of the State
of Connecticut, Hartford, CT (Richard Blu-
menthal, Atty. Gen., Richard J. Lynch, Phyl-
lis E. Hyman, Asst. Attys. Gen., of counsel),
for defendants-appellants Gwen B. Weltman,
Acting Commissioner of the Office of Health
Care Access, and Donald F. Miller, in his
official capacity as Commissioner of the State
of Connecticut Department of Revenue Ser-
vices.

William J. Doyle, Wiggin & Dana, New
Haven, CT (Karen L. Clute, of counsel), for
plaintiff-appellee the Connecticut Hospital
Association.

Before McLAUGHLIN, JACOBS, Circuit
Judges, and KAUFMAN, District Judge.*

PER CURIAM:

The defendants appeal a decision of the
United States District Court for the District
of Connecticut (Alfred V. Covello, *Judge* ),
which held that the Employee Retirement
Income Security Act of 1974, as amended, 29
U.S.C. § 1001 *et seq.* ("ERISA"), preempted
Connecticut's second attempt to enact a stat-

* The Honorable Frank A. Kaufman, of the United States District Court for the District of Maryland, sitting by designation.

ute that imposed surcharges on hospital bills ultimately paid by ERISA plans. For reasons explained fully in *New England Health Care Employees Union, Dist. 1199 v. Mount Sinai Hospital,* 65 F.3d 1024 (2d Cir.1995), we reverse and remand with instructions to enter judgment for the defendants.

## I.

In 1991, Connecticut enacted a statute, the Uncompensated Care Pool Act ("Act I"), which required those with private health insurance (including ERISA plans) to subsidize medical care for the poor. Conn.Pub.Acts 91–2 & 92–16, as codified by Conn.Gen.Stat. § 19a–168 *et seq.,* and as amended by Conn. Pub. Acts 93–44 & 93–229. Under Act I, hospitals imposed a surcharge on the bill of any patient with private health care insurance. The hospitals sent the surcharge to the state, which, after pooling it in an "uncompensated care pool," returned it to the hospitals to cover costs incurred for uncompensated care. This pass-through enabled Connecticut to qualify for federal Medicaid matching funds.

A hospital patient, her union, and her employee benefits plan sued the official in charge of the pooling fund. They argued that ERISA preempted Act I, and moved for summary judgment. Relying heavily on our first opinion in *Travelers Insurance Co. v. Cuomo,* 14 F.3d 708 (2d Cir.1993) [hereinafter, *Travelers I* ], the United States District Court for the District of Connecticut (José A. Cabranes, then-*Chief Judge* ) granted summary judgment for the plaintiffs. *New England Health Care Employees Union Dist. 1199 v. Mount Sinai Hosp.,* 846 F.Supp. 190, 195–200 (D.Conn.1994). The defendants appealed, and we reserved decision pending the Supreme Court's decision in the appeal from *Travelers I.*

Meanwhile, Connecticut repealed Act I, replacing it with a substantially similar statute. Conn.Pub.Acts 94–9 ("Act II"). Like Act I, Act II contains a surcharge, Act II §§ 14–20; authorizes cost-shifting, §§ 26–33; and enables Connecticut to qualify for hundreds of millions of dollars in federal Medicaid matching funds, which it used to balance its bud-

get. Act II also imposes a gross earnings tax on general hospitals. §§ 21–35. The Connecticut Hospital Association ("CHA"), which runs an ERISA plan for its own employees (and was a defendant in the Act I case), sued the officials in charge of enforcing Act II. The officials moved to dismiss; CHA moved for summary judgment; and the officials cross-moved for summary judgment.

Relying heavily on Judge Cabranes' decision regarding Act I, the United States District Court for the District of Connecticut (Alfred V. Covello, *Judge* ) granted summary judgment for CHA, holding that ERISA preempted Act II. *Connecticut Hosp. Ass'n v. Pogue,* 870 F.Supp. 444 (D.Conn.1994). It reasoned that Act II had a substantial economic impact on ERISA plans, and depended on ERISA plans for its financial viability. *Id.* at 448–50. Accordingly, the court enjoined Act II's enforcement. *Id.* at 450.

The defendants appealed, repeating several arguments raised during the Act I appeal. Once again, we reserved decision pending the Supreme Court's decision regarding *Travelers I.* After the Court reversed *Travelers I* in *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Co.,* —— U.S. ——, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) [hereinafter *Travelers II* ], we requested letter briefs from the parties here (and, for the Act I appeal, from the parties there, as well). We then issued our decision regarding Act I in *New England Health Care.* We held that ERISA did *not* preempt Act I. *New England Health Care,* 65 F.3d at 1027, 1029–34.

## II.

The defendants now argue that, in light of *Travelers II,* ERISA does not preempt Act II, either. Given *New England Health Care* and our other decisions construing *Travelers II,* we must agree. See *NYS Health Maint. Org. Conf. v. Curiale,* 64 F.3d 794 (2d Cir. 1995); *Travelers v. Pataki,* 63 F.3d 89 (2d Cir.1995) (per curiam) [hereinafter, *Travelers III* ].

First, CHA did not plead in its complaint that it was a self-insured plan. Thus, it

cannot exploit the loophole the Supreme Court left open in *Travelers II*. *See Travelers II*, —— U.S. at —— n. 4, 115 S.Ct. at 1675 n. 4 (declining to address a New York "surcharge statute insofar as it applie[d] to self-insured plans"). Even if it could, we have since closed that loophole. *See Travelers III*, 63 F.3d at 93 (a plan's self-insured status does not matter for ERISA preemption purposes generally; rather, it matters "only if a state law that should generally be preempted under [ERISA] qualifies as a law regulating insurance"); *accord New England Health Care*, 65 F.3d at 1031.

Second, Act II has no "reference" to ERISA. Act I included a self-destruct clause that would terminate it "in the event that the final result of litigation brought pursuant to [ERISA]" was that ERISA plans would be exempt from it. Conn.Gen.Stat. § 19a–168m, as amended by Conn.Pub.Acts 93–44, § 17. Trying to avoid the problems raised by Act I, the Connecticut legislature did not include this clause in Act II. *But cf. New England Health Care*, 65 F.3d at 1032 (Act I's self-destruct clause did not trigger ERISA preemption). Accordingly, the "reference" line of ERISA preemption cases, *e.g., District of Columbia v. Greater Wash. Bd. of Trade*, —— U.S. ——, ——, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992), is wholly inapposite.

Third, like the plaintiffs in *New England Health Care* regarding Act I, CHA adduced no proof that Act II increased costs to ERISA plans at all, much less that Act II actually forced it to reduce benefits. *See New England Health Care*, 65 F.3d at 1031. Moreover, because CHA is not a self-insured plan, Act II's economic impact was indisputably indirect. Accordingly, without evidence that Act II produced "such acute, albeit indirect, economic effects ... as to force an ERISA plan to adopt a certain scheme of substantive coverage or to effectively restrict its choice of insurers," *Travelers II*, —— U.S. at ——, 115 S.Ct. at 1683, ERISA does not preempt Act II.

Nor can CHA avail itself of our decision in *NYSA–ILA Medical & Clinical Services Fund v. Axelrod*, 27 F.3d 823 (2d Cir.1994). The Supreme Court vacated that decision in light of *Travelers II*. *See Chassin v. NYSA–ILA Medical & Clinical Services Fund*, —— U.S. ——, 115 S.Ct. 1819, 131 L.Ed.2d 742 (1995). True, *NYSA–ILA* held that a law targeting the healthcare industry is preempted by ERISA, even if it only minimally increases costs to ERISA plans. *See NYSA–ILA*, 27 F.3d at 826–28. Even if we assume *NYSA–ILA* remains good law, it applies only when a state law directly and immediately affects an ERISA plan's revenues, *e.g.*, by taxing payments made by patients to a hospital owned by an ERISA plan. *See Travelers III*, 63 F.3d at 94; *accord New England Health Care*, 65 F.3d at 1032. Here, in contrast, Act II raises costs to a third party—a patient enrolled in an ERISA plan—who remains liable for the balance of any bill an ERISA plan refuses to pay. *See New England Health Care*, 65 F.3d at 1031–32; *Travelers III*, 63 F.3d at 94.

Finally, that Act II would be feckless without the participation of ERISA plans cannot be a basis for ERISA preemption. *See New England Health Care*, 65 F.3d at 1033–34 (ERISA preemption looks to a law's impact on ERISA plans, not vice versa; New York's surcharge statute also "depended" on ERISA plans, yet *Travelers II* found no basis for preemption; and "dependence" theory "sound[ed] uncomfortably like" dicta we proffered in our now-vacated *NYSA–ILA* decision).

### III.

Accordingly, we reverse the judgment of the district court and remand with instructions to enter judgment for the defendants, and to enter an appropriate order regarding any payments that should have been made under Act II.