DE BUONO, NEW YORK COMMISSIONER OF
HEALTH, ET AL. *v.* NYSA–ILA MEDICAL AND
CLINICAL SERVICES FUND, BY ITS
TRUSTEES, BOWERS, ET AL.

No. 95–1594.   Argued February 24, 1997—Decided June 2, 1997

*M. Patricia Smith,* Assistant Attorney General of New York, argued the cause for petitioners. With her on the briefs were *Dennis C. Vacco,* Attorney General, *Barbara G. Billet,* Solicitor General, *Peter H. Schiff,* Deputy Solicitor General, and *Daniel F. De Vita,* Assistant Attorney General.

*Deputy Solicitor General Kneedler* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Acting Solicitor General Dellinger,*

*James A. Feldman, J. Davitt McAteer, Allen H. Feldman, Nathaniel I. Spiller,* and *Judith D. Heimlich.*

*Donato Caruso* argued the cause for respondents. With him on the brief were *C. Peter Lambos, Thomas W. Gleason,* and *Ernest L. Mathews, Jr.*[*]

JUSTICE STEVENS delivered the opinion of the Court.

This is another Employee Retirement Income Security Act of 1974 (ERISA) pre-emption case.[1] Broadly stated, the

---

[*]Briefs of *amici curiae* urging reversal were filed by *Richard Blumenthal,* Attorney General of Connecticut, and *Phyllis E. Hyman,* Assistant Attorney General, and by the Attorneys General for their respective States as follows: *Grant Woods* of Arizona, *Winston Bryant* of Arkansas, *Robert A. Butterworth* of Florida, *Margery S. Bronster* of Hawaii, *Pamela Carter* of Indiana, *Andrew Ketterer* of Maine, *J. Joseph Curran, Jr.,* of Maryland, *Scott Harshbarger* of Massachusetts, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Frankie Sue Del Papa* of Nevada, *Jeffrey R. Howard* of New Hampshire, *Peter Verniero* of New Jersey, *W. A. Drew Edmondson* of Oklahoma, *Theodore R. Kulongoski* of Oregon, *Thomas W. Corbett, Jr.,* of Pennsylvania, *Jeffrey B. Pine* of Rhode Island, *Dan Morales* of Texas, *Jeffrey L. Amestoy* of Vermont, *James S. Gilmore III* of Virginia, *Christine O. Gregoire* of Washington, *Darrell V. McGraw, Jr.,* of West Virginia, and *James E. Doyle* of Wisconsin; for the American Federation of State County and Municipal Employees, AFL–CIO, by *Larry Weinberg, John C. Dempsey, Andrew D. Roth,* and *Nancy E. Hoffman;* for the Healthcare Association of New York State et al. by *Jeffrey J. Sherrin* and *Mark Thomas;* for the National Employment Lawyers Association by *Mary Ellen Signorille* and *Jeffrey Lewis;* and for the National Governors' Association et al. by *Richard Ruda.*

*Ronald S. Longhofer* and *John H. Eggertsen* filed a brief for the Self-Insurance Institute of America, Inc., as *amicus curiae* urging affirmance.

[1] The boundaries of ERISA's pre-emptive reach have been the focus of considerable attention from this Court. This case is one of three addressing the issue this Term. See *Boggs* v. *Boggs, post,* p. 833; *California Div. of Labor Standards Enforcement* v. *Dillingham Constr., N. A., Inc.,* 519 U. S. 316 (1997). And in the 16 years since we first took up the question, we have decided no fewer than 13 cases. See *New York State Conference*

question presented is whether hospitals operated by ERISA plans are subject to the same laws as other hospitals. More precisely, the question is whether the opaque language in ERISA's § 514(a)[2] precludes New York from imposing a gross receipts tax on the income of medical centers operated by ERISA funds. We hold that New York may collect its tax.

I

In 1990, faced with the choice of either curtailing its Medicaid program or generating additional revenue to reduce the program deficit, the New York General Assembly enacted the Health Facility Assessment (HFA).[3] The HFA imposes a tax on gross receipts for patient services at hospitals, residential health care facilities, and diagnostic and treatment

---

*of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.,* 514 U. S. 645 (1995); *John Hancock Mut. Life Ins. Co.* v. *Harris Trust and Sav. Bank,* 510 U. S. 86 (1993); *District of Columbia* v. *Greater Washington Bd. of Trade,* 506 U. S. 125 (1992); *Ingersoll-Rand Co.* v. *McClendon,* 498 U. S. 133 (1990); *FMC Corp.* v. *Holliday,* 498 U. S. 52 (1990); *Massachusetts* v. *Morash,* 490 U. S. 107 (1989); *Mackey* v. *Lanier Collection Agency & Service, Inc.,* 486 U. S. 825 (1988); *Fort Halifax Packing Co.* v. *Coyne,* 482 U. S. 1 (1987); *Metropolitan Life Ins. Co.* v. *Taylor,* 481 U. S. 58 (1987); *Pilot Life Ins. Co.* v. *Dedeaux,* 481 U. S. 41 (1987); *Metropolitan Life Ins. Co.* v. *Massachusetts,* 471 U. S. 724 (1985); *Shaw* v. *Delta Air Lines, Inc.,* 463 U. S. 85 (1983); and *Alessi* v. *Raybestos-Manhattan, Inc.,* 451 U. S. 504 (1981). The issue has also generated an avalanche of litigation in the lower courts. See *Greater Washington Bd. of Trade,* 506 U. S., at 135, and n. 3 (STEVENS, J., dissenting) (observing that in 1992, a LEXIS search uncovered more than 2,800 opinions on ERISA pre-emption).

[2] Section 514(a) of ERISA informs us that "[e]xcept as provided in subsection (b) of this section, the provisions of this [statute] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 88 Stat. 897, 29 U. S. C. § 1144(a). None of the exceptions in subsection (b) is directly at issue in this case.

[3] N. Y. Pub. Health Law § 2807-d (McKinney Supp. 1992).

centers.[4] The assessments become a part of the State's general revenues.

Respondents are the trustees of the NYSA–ILA Medical and Clinical Services Fund (Fund), which administers a self-insured, multiemployer welfare benefit plan. The Fund owns and operates three medical centers—two in New York and one in New Jersey—that provide medical, dental, and other health care benefits primarily to longshore workers, retirees, and their dependents. The New York centers are licensed by the State as "diagnostic and treatment centers," App. 80, and are thus subject to a 0.6 percent tax on gross receipts under the HFA. N. Y. Pub. Health Law § 2807–d(2)(c) (McKinney 1993).

During the period from January through November of 1991, respondents paid HFA assessments totaling $7,066 based on the two New York hospitals' patient care income of $1,177,670. At that time, they discontinued the payments and brought this action against appropriate state officials (petitioners) to enjoin future assessments and to obtain a refund of the tax paid in 1991. The complaint alleged that the HFA is a state law that "relates to" the Fund within the meaning of § 514(a) of ERISA, and is therefore pre-empted as applied to hospitals run by ERISA plans.

The District Court denied relief. It concluded that HFA was not pre-empted because it was a "tax of general application" that did not "interfere with the calculation of benefits or the determination of an employee's eligibility for benefits" and thus had only an incidental impact on benefit plans. App. to Pet. for Cert. 21a.[5]

---

[4] In addition to taxing the income derived from patient services at these facilities, the HFA taxes investment income and certain operating income. N. Y. Pub. Health Law §§ 2807–d(3)(c), 2807–d(3)(d) (McKinney 1993). The taxation of these activities is not challenged here.

[5] In response to the complaint filed in 1992, petitioners objected to federal jurisdiction, relying on the Tax Injunction Act, 28 U. S. C. § 1341, which provides that federal courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such

The Court of Appeals for the Second Circuit reversed. It distinguished cases in which we had found that certain "laws of general application" were not pre-empted by ERISA,[6] explaining that the HFA "targets only the health care industry," which is, "by definition, the realm where ERISA welfare plans must operate," *NYSA–ILA Medical and Clinical Services Fund* v. *Axelrod, M. D.*, 27 F. 3d 823, 827 (1994). The court reasoned that because the HFA "operates as an immediate tax on payments and contributions which were intended to pay for participants' medical benefits," it directly affects "the very operations and functions that make the Fund what it is, a provider of medical, surgical, and hospital

---

State." Respondents contended that the statute did not apply because the New York courts do not provide the "plain" remedy required to bar federal jurisdiction. The District Court appears to have agreed with respondents, see App. to Pet. for Cert. 19a, but when it ultimately granted summary judgment and dismissed the complaint, it did not squarely decide the question, *id.*, at 19a, 22a–23a. The Court of Appeals did not address the Tax Injunction Act in either of its two opinions in this case and there is no suggestion anywhere in the papers that the State raised the issue before that court. The Second Circuit had previously held, however, that the Tax Injunction Act is not a bar to actions such as this. See *Travelers Ins. Co.* v. *Cuomo*, 14 F. 3d 708, 713–714 (1993), rev'd on other grounds, *New York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U. S. 645 (1995). In *Travelers*, we noted, but did not reexamine, that conclusion. See *id.*, at 652–653, n. 4. In the case at bar, the Court of Appeals presumably was satisfied that its jurisdiction was secure for the reasons given in *Travelers*. Before this Court, no party in either *Travelers* or the current case has mentioned the Tax Injunction Act or questioned the Court of Appeals' conclusion that a "plain" remedy is unavailable in the New York courts. Given our settled practice of according respect to the courts of appeals' greater familiarity with issues of state law, cf. *Bishop* v. *Wood*, 426 U. S. 341, 346–347, and n. 10 (1976), and the State's active participation in nearly four years of federal litigation with no complaint about federal jurisdiction, it is appropriate for us to presume that the Court of Appeals correctly determined that, under these circumstances, New York courts did not provide a "plain" remedy barring federal consideration of the state tax.

[6] See, *e. g., Mackey*, 486 U. S., at 838 (generally applicable garnishment law not pre-empted); *Fort Halifax Packing Co.*, 482 U. S., at 19 (state law requiring one-time severance payment not pre-empted).

care to its participants and their beneficiaries." *Ibid.* The HFA, concluded the court, thus "related to" the Fund because it reduced the amount of Fund assets that would otherwise be available to provide plan members with benefits, and could cause the plan to limit its benefits, or to charge plan members higher fees.

The first petition for certiorari in this case was filed before we handed down our opinion in *New York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U. S. 645 (1995). In that case we held that ERISA did not pre-empt a New York statute that required hospitals to collect surcharges from patients covered by a commercial insurer but not from patients insured by a Blue Cross/Blue Shield plan. *Id.*, at 649–651. After deciding *Travelers*, we vacated the judgment of the Court of Appeals in this case and remanded for further consideration in light of that opinion. 514 U. S. 1094 (1995).

On remand the Court of Appeals reinstated its original judgment. The court distinguished the statute involved in *Travelers* on the ground that—by imposing a tax on the health insurance carriers who provided coverage to plans and their beneficiaries—it had only an indirect economic influence on the decisions of ERISA plan administrators, whereas the HFA "depletes the Fund's assets directly, and thus has an immediate impact on the operations of an ERISA plan," *NYSA–ILA Medical and Clinical Services Fund* v. *Axelrod, M. D.*, 74 F. 3d 28, 30 (1996). We granted the New York officials' second petition for certiorari, 519 U. S. 926 (1996), and now reverse.

II

When the Second Circuit initially found the HFA pre-empted as applied to Fund-operated hospitals, that court relied substantially on an expansive and literal interpretation of the words "relate to" in § 514(a) of ERISA. 27 F. 3d, at 826. In reconsidering the case on remand, the court appears to have adhered to that approach, failing to give proper

weight to *Travelers'* rejection of a strictly literal reading of § 514(a).

In *Travelers,* as in our earlier cases, we noted that the literal text of § 514(a) is "clearly expansive." 514 U. S., at 655. But we were quite clear in that case that the text could not be read to "extend to the furthest stretch of its indeterminacy, [or] for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere,' H. James, Roderick Hudson xli (New York ed., World's Classics 1980)." *Ibid.*[7]

In our earlier ERISA pre-emption cases, it had not been necessary to rely on the expansive character of ERISA's literal language in order to find pre-emption because the state laws at issue in those cases had a clear "connection with or reference to," *Shaw* v. *Delta Air Lines, Inc.,* 463 U. S. 85, 96–97 (1983), ERISA benefit plans. But in *Travelers* we confronted directly the question whether ERISA's "relates to" language was intended to modify "the starting presumption that Congress does not intend to supplant state law." 514 U. S., at 654.[8] We unequivocally concluded that it did not, and we acknowledged "that our prior attempt[s] to construe the phrase 'relate to' d[o] not give us much help drawing the line here." *Id.,* at 655. In order to evaluate whether the normal presumption against pre-emption has been overcome in a particular case, we concluded that we "must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objec-

---

[7] See also *Dillingham Constr.,* 519 U. S., at 335 (SCALIA, J., concurring) ("[A]pplying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else").

[8] Where "federal law is said to bar state action in fields of traditional state regulation . . . we have worked on the 'assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Travelers,* 514 U. S., at 655 (quoting *Rice* v. *Santa Fe Elevator Corp.,* 331 U. S. 218, 230 (1947). See also *Dillingham Constr.,* 519 U. S., at 325.

tives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.*, at 656. We endorsed that approach once again earlier this Term in concluding that California's prevailing wage law was not pre-empted by ERISA. *California Div. of Labor Standards Enforcement* v. *Dillingham Constr., N. A., Inc.*, 519 U. S. 316, 325 (1997).[9]

Following that approach here, we begin by noting that the historic police powers of the State include the regulation of matters of health and safety. *Hillsborough County* v. *Automated Medical Laboratories, Inc.*, 471 U. S. 707, 715 (1985). While the HFA is a revenue raising measure, rather than a regulation of hospitals, it clearly operates in a field that " 'has been traditionally occupied by the States.' " *Ibid.* (quoting *Jones* v. *Rath Packing Co.*, 430 U. S. 519, 525 (1977)).[10] Respondents therefore bear the considerable burden of overcoming "the starting presumption that Congress does not intend to supplant state law." *Travelers*, 514 U. S., at 654.

There is nothing in the operation of the HFA that convinces us it is the type of state law that Congress intended ERISA to supersede.[11] This is not a case in which New

---

[9] "The prevailing wage statute alters the incentives, but does not dictate the choices, facing ERISA plans. In this regard, it is 'no different from myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate.' *Travelers*, 514 U. S., at 668. We could not hold pre-empted a state law in an area of traditional state regulation based on so tenuous a relation without doing grave violence to our presumption that Congress intended nothing of the sort. We thus conclude that California's prevailing wage laws and apprenticeship standards do not have a 'connection with,' and therefore do not 'relate to,' ERISA plans." *Dillingham Constr.*, 519 U. S., at 334.

[10] Indeed, the Court of Appeals rested its conclusion in no small part on the fact that the HFA "targets only the health care industry." *NYSA–ILA Medical and Clinical Services Fund* v. *Axelrod, M. D.*, 27 F. 3d 823, 827 (CA2 1994). Rather than warranting pre-emption, this point supports the application of the "starting presumption" against pre-emption.

[11] The respondents place great weight on the fact that in 1983 Congress added a specific provision to ERISA to save Hawaii's Prepaid Health Care Act from pre-emption, and that in so doing, the Legislature noted that

York has forbidden a method of calculating pension benefits that federal law permits,[12] or required employers to provide certain benefits.[13] Nor is it a case in which the existence of a pension plan is a critical element of a state-law cause of action,[14] or one in which the state statute contains provisions that expressly refer to ERISA or ERISA plans.[15]

A consideration of the actual operation of the state statute leads us to the conclusion that the HFA is one of "myriad state laws" of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not "relate to" them within the meaning of the governing statute. See *Travelers*, 514 U. S., at 668; *Dillingham*

---

ERISA generally does pre-empt "any State tax law relating to employee benefit plans." 29 U. S. C. § 1144(b)(5)(B)(i). See Brief for Respondents 17–23. But there is no significant difference between the language in this provision and the pre-emption provision in § 514(a), and we are unconvinced that a stricter standard of pre-emption should apply to state tax provisions than to other state laws.

[12] See, *e. g.*, *Alessi* v. *Raybestos-Manhattan, Inc.*, 451 U. S., at 524–525 ("Whatever the purpose or purposes of the New Jersey statute, we conclude that it 'relate[s] to pension plans' governed by ERISA because it eliminates one method for calculating pension benefits—integration—that is permitted by federal law").

[13] See, *e. g.*, *Shaw* v. *Delta Air Lines, Inc.*, 463 U. S. 85 (1983) (ERISA pre-empted state law requiring the provision of pregnancy benefits); *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U. S. 724 (1985) (law that required benefit plans to include minimum mental health benefits "related to" ERISA plans).

[14] See, *e. g.*, *Ingersoll-Rand Co.*, 498 U. S., at 139–140 ("We are not dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan. . . . Here, the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law. As a result, this cause of action relates not merely to pension benefits, but to the essence of the pension *plan* itself").

[15] See *Mackey*, 486 U. S., at 828–830 (a provision that explicitly refers to ERISA in defining the scope of the state law's application is pre-empted); *Greater Washington Bd. of Trade*, 506 U. S., at 130–131 ("Section 2(c)(2) of the District's Equity Amendment Act specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is pre-empted").

*Constr.*, 519 U. S., at 333–334.  The HFA is a tax on hospitals.  Most hospitals are not owned or operated by ERISA funds.  This particular ERISA fund has arranged to provide medical benefits for its plan beneficiaries by running hospitals directly, rather than by purchasing the same services at independently run hospitals.  If the Fund had made the other choice, and had purchased health care services from a hospital, that facility would have passed the expense of the HFA onto the Fund and its plan beneficiaries through the rates it set for the services provided.  The Fund would then have had to decide whether to cover a more limited range of services for its beneficiaries, or perhaps to charge plan members higher rates.  Although the tax in such a circumstance would be "indirect," its impact on the Fund's decisions would be in all relevant respects identical to the "direct" impact felt here.  Thus, the supposed difference between direct and indirect impact—upon which the Court of Appeals relied in distinguishing this case from *Travelers*—cannot withstand scrutiny.  Any state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is preempted by the federal statute.[16]

The judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

"[I]t is the duty of this court to see to it that the jurisdiction of the Circuit Court, which is defined and limited by

---

[16] As we acknowledged in *Travelers,* there might be a state law whose economic effects, intentionally or otherwise, were so acute "as to force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers" and such a state law "might indeed be pre-empted under § 514," 514 U. S., at 668.  That is not the case here.

statute, is not exceeded." *Louisville & Nashville R. Co.* v. *Mottley*, 211 U. S. 149, 152 (1908). Despite our obligation to examine federal-court jurisdiction even if the issue is not raised by either party, *ibid.*, and despite the Court's explicit acknowledgment, *ante*, at 810–811, n. 5, of the possibility that jurisdiction over this case is barred by the Tax Injunction Act, 28 U. S. C. § 1341, the Court proceeds to decide the merits of respondents' Employee Retirement Income Security Act of 1974 (ERISA) pre-emption challenge. The Court offers two grounds for passing over the threshold question of jurisdiction: our "settled practice of according respect to the courts of appeals' greater familiarity with issues of state law," and petitioners' "active participation in nearly four years of federal litigation with no complaint about federal jurisdiction." *Ante*, at 811, n. 5. In my view, neither of these factors justifies our proceeding without resolving the issue of jurisdiction.

The Tax Injunction Act bars federal-court jurisdiction over an action seeking to enjoin a state tax (such as the one at issue here) where "a plain, speedy and efficient remedy may be had in the courts of such State." 28 U. S. C. § 1341; see *Arkansas* v. *Farm Credit Servs. of Central Ark.*, *post*, at 825 (describing the Act as a "jurisdictional rule" and "broad jurisdictional barrier"). The District Court in this case suggested that the Tax Injunction Act might not bar jurisdiction here, since New York courts might not afford respondents a "plain" remedy within the meaning of the Act. See *NYSA–ILA Medical and Clinical Services Fund* v. *Axelrod*, No. 92 Civ. 2779 (SDNY, Feb. 18, 1993), App. to Pet. for Cert. 19a. That suggestion was not, however, based upon the District Court's resolution of any "issues of state law," as today's opinion intimates, *ante*, at 811, n. 5; rather, it rested upon the District Court's conclusion that uncertainty over the implications of a *federal* statute—§ 502(e)(1) of ERISA, 29 U. S. C. § 1132(e)(1)—might render the availability of a state-

court remedy not "plain." App. to Pet. for Cert. 19a.* The Court of Appeals, in turn, made no mention of the jurisdictional issue, presumably because, under controlling Circuit precedent, jurisdiction was secure: The Second Circuit had previously held that state courts could not provide any remedy for ERISA-based challenges to state taxes within the meaning of the Tax Injunction Act, since "Congress has divested the state courts of jurisdiction" over ERISA claims. *Travelers Ins. Co.* v. *Cuomo*, 14 F. 3d 708, 714 (1993) (citing ERISA § 502(e)(1), 29 U. S. C. § 1132(e)(1)), rev'd on other grounds *sub nom. New York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U. S. 645 (1995). That holding (like the District Court's discussion of the issue in this case) in no way turns on New York state law, so I am at a loss to understand the Court's invoca-

---

*That the District Court rested its conclusion on 29 U. S. C. § 1132(e)(1) is demonstrated by the sole authorities it cited in support of that conclusion: *Travelers Ins. Co.* v. *Cuomo*, 813 F. Supp. 996 (SDNY 1993), aff'd in part and rev'd in part, 14 F. 3d 708 (CA2 1993), rev'd on other grounds *sub nom. New York State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U. S. 645 (1995); and *National Carriers' Conference Committee* v. *Heffernan*, 440 F. Supp. 1280, 1283 (Conn. 1977). The only argument in *Travelers* that supports the conclusion reached here is the argument that "[b]ecause ERISA generally confers exclusive jurisdiction on the federal courts [under 29 U. S. C. § 1132(e)(1)], a New York state court might well feel compelled to dismiss a state court action on the grounds that its jurisdiction has been preempted . . . . Thus, at a minimum the availability of a state court remedy is not 'plain.'" 813 F. Supp., at 1001 (internal quotation marks and brackets omitted). Likewise, *Heffernan* (which arose in Connecticut, not New York) offers pertinent reasoning based only on federal law: "Jurisdiction over suits arising under ERISA is, with minor exceptions, vested exclusively in the federal courts. 29 U. S. C. § 1132(e)(1). If this suit were brought before a . . . state court, that court might well feel compelled to dismiss the action on the grounds that its jurisdiction had been preempted by federal legislation and the supremacy clause. Consequently the plaintiff cannot be said to have a 'plain, speedy and efficient' remedy in state court . . . ." 440 F. Supp., at 1283 (footnote omitted).

tion of "our settled practice of according respect to the courts of appeals' greater familiarity with issues of state law," *ante,* at 811, n. 5, as a basis for overlooking the question whether the Tax Injunction Act bars federal-court jurisdiction.

The second factor relied upon by the Court in support of its treatment of the jurisdictional issue is that petitioners dropped the issue after the District Court failed to adopt their interpretation of the Tax Injunction Act. But the fact that petitioners have "active[ly] participat[ed] in nearly four years of federal litigation with no complaint about federal jurisdiction," *ibid.,* cannot possibly confer upon us jurisdiction that we do not otherwise possess. It is our duty to resolve the jurisdictional question, whether or not it has been preserved by the parties. *Sumner* v. *Mata,* 449 U. S. 539, 548, n. 2 (1981); *Louisville & Nashville R. Co., supra,* at 152. In *Sumner* we confronted the identical circumstance presented here—a jurisdictional argument raised before the District Court but abandoned before the Court of Appeals— and felt the need to address the jurisdictional issue. 449 U. S., at 547, n. 2.

I have previously noted the split among the Circuits on the question whether the Tax Injunction Act deprives federal courts of jurisdiction over ERISA-based challenges to state taxes. See *Barnes* v. *E-Systems, Inc. Group Hospital Medical & Surgical Ins. Plan,* 501 U. S. 1301, 1302–1303 (1991) (SCALIA, J., in chambers). In a prior case, we expressly left the question open, saying that "[w]e express no opinion [on] whether a party [can] sue under ERISA to enjoin or to declare invalid a state tax levy, despite the Tax Injunction Act"; we noted that the answer would depend on whether "state law provide[s] no 'speedy and efficient remedy'" and on whether "Congress intended § 502 of ERISA to be an exception to the Tax Injunction Act." *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.,* 463 U. S. 1, 20, n. 21 (1983). Because I am

uncertain of the federal courts' jurisdiction over this case, I would set the jurisdictional issue for briefing and argument, and would resolve that issue before reaching the merits of respondents' ERISA pre-emption claim. Accordingly, I respectfully dissent from today's opinion.