BYE, Circuit Judge,
dissenting.
I disagree with the majority’s conclusion that ERISA preempts the Minnesota Sprinkler Fitter statute and concomitant regulations. I believe that conclusion reflects a more expansive view of ERISA preemption than that expressed by the Supreme Court in California Div. of Labor Standards Enforcement v. Dillingham Const., 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997), and other recent decisions.
We are dealing with a matter traditionally regulated by the States, where we start with the presumption that ERISA does not preempt the state law. Dillingham, 519 U.S. at 330-32, 117 S.Ct. 832. In areas of traditional state regulation, we must differentiate between a state law that dictates choices faced by ERISA plans when administering the funding or provision of benefits, and a state law that dictates substantive safety standards applicable to ERISA and non-ERISA programs alike. I believe that Dillingham, as well as several other recent Supreme Court decisions, instruct us that a state law of the former type is preempted, but the latter type is not. Compare Egelhoff v. Egelhoff, 532 U.S. 141, 121 S.Ct. 1322, 1329, 149 L.Ed.2d 264 (2001) (finding preemption where the state law “does dictate the choices facing ERISA plans with respect to matters of plan administration.’’) (emphasis added) (internal quotations omitted), with De Buono v. NYSA-ILA Med. & Clinical Serv. Fund, 520 U.S. 806, 815-16, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (finding no preemption where the state law “impose[d] some burdens on the administration of ERISA plans” but dictated that both ERISA and non-ERISA owned or operated hospitals pay a tax, and therefore functioned as a law of general applicability irrespective of the existence of an ERISA plan), and New York State Conf. of Blue Cross & Blue Shield v. Travelers Ins. Co., 514 U.S. 645, 657, 660, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (emphasizing ERISA’s focus on the “nationally uniform administration of employee benefit plans” and finding no preemption where the state law imposed a surcharge that had an indirect economic influence on ERISA plans but did not “preclude uniform administrative practice or the provision of a uniform interstate benefit package if a plan wishes to provide one”) (emphasis added).
Applying Dillingham, the Tenth Circuit found no preemption of a Colorado law setting substantive safety standards for apprenticeship training programs by requiring a one-to-one ratio of electrical journeyman to apprentices on jobsites. Willmar Elec. Serv. Inc. v. Cooke, 212 F.3d 533, 537-39 (10th Cir.2000). The court addressed and rejected an argument that the law should be preempted because it “dictated” the teacher-to-student ratio that ERISA plans must use in an apprenticeship training program:
An examination of the objectives of ERISA and the effects of the Colorado law persuades us that this is not the type of regulation Congress had in mind in the preemption clause. The primary effect of the ratio requirement is to indi *821 rectly increase the cost of apprentice training. In this respect it is directly analogous to the apprentice wage law at issue in Dillingham. In requiring such supervision the Colorado law neither mandates nor limits the granting of benefits to employees.
Willmar, 212 F.3d at 538.
I find the Tenth Circuit’s logic and reasoning in Willmar persuasive, and disagree with the majority’s attempt to distinguish it on the grounds that Minnesota’s law actually prevents apprentice training. The substantive safety standards in Minnesota’s statute and regulations are perhaps more comprehensive than the Colorado law at issue in Willmar, but that is a difference in degree, not in kind. Both sets of laws have the same effect on ERISA plans; both indirectly increase the cost of apprentice training in order to comply with substantive safety standards set by the state, but neither “mandates nor limits the granting of benefits to employees.” Id. Likewise, both function as laws of general applicability, indiscriminately requiring safety standards for ERISA and non-ERISA apprenticeship training programs alike.
“Indeed, if ERISA were concerned with any state action — such as medical care quality standards or hospital workplace regulations — that increased costs of providing certain benefits, and thereby potentially affected the choices made by ERISA plans, we could scarcely see the end of ERISA’s pre-emptive reach, and the words ‘relate to’ would limit nothing.” Dillingham, 519 U.S. at 329, 117 S.Ct. 832. Applying Dillingham, we found no preemption for a Minnesota law that dictated ethical standards for physicians participating in an ERISA plan, concluding that “[njothing in ERISA attempts to preempt the entire field of health care or the regulation of professional standards for physicians.” Shea v. Esensten, 208 F.3d 712, 719 (8th Cir.2000). We found it significant that “Minnesota’s law [is one] of general application. It makes no reference to and functions irrespective of the existence of an ERISA plan.” Id. at 717 (citations and internal quotations omitted).
Likewise, .nothing in ERISA attempts to preempt the entire field of apprenticeship training programs. Minnesota’s Sprinkler Fitter statute and concomitant regulations are laws of general application, which function irrespective of the existence of an ERISA plan in their indiscriminate imposition of substantive safety standards. I find it inconsistent for us to hold in Shea that substantive quality standards in the medical field are not preempted, while holding that substantive safety standards in the fire protection industry are preempted.
I respectfully dissent.