**WILLMAR ELECTRIC SERVICE, INC., a Minnesota corporation, Plaintiff,**

v.

**Joseph GARCIA, as executive Director of Colorado Department of Regulatory Agencies; Bruce Douglas, as Director of the Colorado Division of Registrations; George Waterhouse, as Program Administrator of the Colorado State Electrical Board; Larry A. Deputy, Rick Filson, Kenneth Mackey, Timothy Miller, Brian Murray, Kristin Norris, Rolf Philipsen, Robert Saint, and Timothy Thompson, as Members of the Colorado State Electrical Board, Defendants.**

No. Civ.A. 98–WY–939–WD.

United States District Court, D. Colorado.

March 30, 1999.

Lawrence W. Marquess, Darin L. Mackender, Otten, Johnson, Neff & Ragonetti, P.C., Denver, CO, for Defendants Joseph Garcia, Larry A. Deputy, Rick Filson Kenneth Mackey, Timothy Miller, Brian Murray, Kristin Norris, Rolf Philipsen, Robert Saint, Timothy Thompson.

Denise DeForest, Attorney General's Office, Denver, CO, Richard Otto Schroeder, Denver, CO, for Defendants Donald R. Clark and M. Michael Cooke.

Richard Otto Schroeder, Denver, CO, for defendant International Brotherhood of Electrical Workers, IBEW Local No. 12, IBEW Local No. 68, IBEW Local No. 113 and IBEW Local No. 969.

### ORDER ON SUMMARY JUDGMENT

DOWNES, District Judge.

This matter comes before the Court on Plaintiff's and Defendants' Cross Motions for Summary Judgment. The Court, having heard oral argument in this matter, having reviewed the parties' motions, and being otherwise fully advised in the premises, FINDS and ORDERS as follows:

### Background

In this case, the Plaintiff, Willmar Electric Service, Inc., is a large multi-state electrical contractor. Plaintiff is based in Minnesota and performs work in approximately 31 states, including Colorado. Since 1985, Plaintiff has completed 12 projects and continues to solicit business in Colorado. Plaintiff utilizes a training program for its apprentice electricians in which apprentices must participate in a variety of training courses. These courses require apprentices to successfully complete both written and performance tests. The program was developed by the National Center for Construction Education and Research, a non-profit organization that provides training to construction and maintenance craft workers throughout the country. The parties agree that Plaintiff's apprenticeship and training program is an

employee welfare benefit plan recognized by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (hereinafter ERISA).

As part of its professional and occupational licensure system, Colorado dictates certain standards for apprentice electricians. Colorado Revised Statutes (C.R.S.) § 12–23–110.5(1) provides:

> Any person may work as an apprentice but shall not do any electrical wiring for the installation for electrical apparatus or equipment for light, heat, or power except under the supervision of a licensed electrician. The degree of supervision required shall be no more than one licensed electrician to supervise no more than one apprentice at the jobsite.

Essentially, this statute sets forth a ratio requirement whereby one licensed journeyman electrician must directly supervise each apprentice electrician on a particular jobsite. This statute applies uniformly to all electrical contractors operating in Colorado.

On January 6, 1990, an inspector from the Colorado State Electrical Board visited the Plaintiff's jobsite. The inspector determined that Plaintiff violated (C.R.S.) § 12–23–110.5(1) at this jobsite, because it allowed more than one apprentice electrician be supervised by one journeyman electrician. The inspector issued a citation to Plaintiff for violation of the ratio statute. On March 9, 1998, the Electrical Board issued a formal charge against Plaintiff alleging that it violated the statute by employing four unregistered apprentices to perform electrical work and by failing to maintain the required ratio of journeyman electricians to apprentice electricians.

On July 13, 1998, the parties resolved all issues relating to Plaintiff's alleged violation of the ratio requirement, except the federal preemption issue addressed herein. Plaintiff admitted a violation of the ratio requirement and agreed to comply with the requirement unless a court determined that federal law preempted or other other-wise rendered unenforceable the ratio requirement statute.

## Standard of Review

The standard of review for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is well established. Summary judgment is appropriate if the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. In applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Moya v. United States*, 35 F.3d 501, 504 (10th Cir.1994); *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996).

In the present case, the parties have stipulated to the facts which are germane to the issue now before the Court. The relevant law will be applied in the context of these agreed upon facts.

## Discussion

■ The issue which the parties have brought before the Court, whether ERISA preempts a state statute addressing occupational regulation, is highly contentious and frequently litigated. Since the enactment of ERISA in 1974, the United States Supreme Court has decided myriad cases regarding ERISA preemption of various sorts of state law. *See California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316, 334, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (Scalia, J., concurring). These decisions reveal that a concrete test for ERISA preemption remains largely elusive. Nonetheless, ERISA's preemption clause interpreted in numerous Supreme Court opinions establishes a framework from which this Court must decide the present issue of preemption.

Effective January 1, 1975, the ERISA preemption clause requires that "(ERISA)

shall supercede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The issue in this case is whether the Plaintiff's plan relates to ERISA. Much attention has been given to the interpretation of the "relates to" provision. The Supreme Court's early interpretation of the preemption provision was that state law relates to ERISA if it has a connection with or makes reference to an ERISA plan. *See e.g. Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). In the present case it is clear that the Colorado Statute does not make reference to ERISA. Consequently, the overarching issue is whether the statute has a connection with ERISA and is therefore preempted.

■ The Supreme Court has long acknowledged that ERISA's preemption provision is broad. Over the years, the Court has employed many terms to describe the expansive nature of ERISA.[1] *Dillingham*, 519 U.S. at 324, 117 S.Ct. 832. The Court's efforts to apply the preemption provision have yielded a two part inquiry. A law "relates to" a covered employee benefit plan if it (1) "has a connection with" or (2) "reference to" such a plan. *Id.*

Unfortunately, application of this standard has proven to be untenable. Recently, the Court recognized that such an "uncritical literalism" in applying the standard offered scant utility in determining Congress' intent as to the extent of ERISA preemption. *Id.*, at 325, 117 S.Ct. 832. In fact, Justice Scalia has astutely observed that "applying the 'relates to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else." *Dillingham*, 519 U.S. at 335, 117 S.Ct. 832. In a series of recent decisions, the Supreme Court has sought to develop a clearer understanding of what it means for a statute to "relate to" ERISA. *See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Company*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *Dillingham*, 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791; *DeBuono v. NYSA–ILA Medical and Clinical Services Fund*, 520 U.S. 806, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997). In *Dillingham*, the Court discarded its vague interpretations of the past and now looks to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well and the nature and effect of the state law on ERISA plans. *Dillingham*, 519 U.S. at 325, 117 S.Ct. 832.

■ When Congress legislates in an area traditionally occupied by the States, this Court must start with the assumption that the historic police powers of the States were not to be superceded by Federal enactment unless that was the clear and manifest purpose of Congress. *Dillingham*, 519 U.S. at 325, 117 S.Ct. 832; *See also California, v. ARC America Corporation*, 490 U.S. 93, 101, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989). The statute at issue in this case is a form of occupational regulation. Occupational licensing is an area historically regulated by states. *See National Solid Wastes Management Association v. Killian*, 918 F.2d 671, 686 (7th Cir.1990). Specifically, apprenticeship standards have long been regulated by states. *Dillingham*, 519 U.S. at 330, 117 S.Ct. 832.

It stands to reason that the Colorado statute presently at issue, a ratio requirement for apprentices, is an area of occupational regulation typically governed by states. Consequently, this Court must determine if the clear and manifest purpose of Congress in enacting ERISA was to

---

**1.** Since 1985, in a number of different cases, the Court has considered the preemption provision as having a "broad scope," an "expansive sweep," and as being "broadly worded," "conspicuous for its breadth," and "deliberately expansive." *Dillingham*, 519 U.S. at 324, 117 S.Ct. 832.

supercede Colorado's occupational licensing prerogative. *See Dillingham*, 519 U.S. at 325, 117 S.Ct. 832.

In *Dillingham* the Supreme Court addressed preemption in the context of apprenticeship standards. The Court stated:

The wages to be paid on public works projects and the substantive standards to be applied to apprenticeship training programs are, however, quite remote from the areas with which ERISA is expressly concerned—reporting, disclosure, fiduciary responsibility, and the like ... A reading of § 514(a) resulting in the preemption of traditionally state-regulated substantive law in those areas where ERISA has nothing to say would be 'unsettling' ... Given the paucity of indication in ERISA and its legislative history of any intent on the part of Congress to pre-empt state apprenticeship standards, or state prevailing wage laws that incorporate them, we are reluctant to alter our ordinary 'assumption that the historic police powers of the state were not to be superceded by the Federal Act.'

*Dillingham*, 519 U.S. at 330–31, 117 S.Ct. 832. In the majority opinion authored by Justice Thomas, the Court proceeded to hold that California's prevailing wage laws and apprenticeship standards do not have a "connection with" and therefore do not "relate to" ERISA plans. *Dillingham*, 519 U.S. at 334, 117 S.Ct. 832. This analysis and conclusion is particularly illustrative here.

Plaintiff is adamant that precedent established in *Boise Cascade Corporation v. Peterson*, 939 F.2d 632 (8th Cir.1991) and *Associated Builders and Contractors v. Perry*, 817 F.Supp. 49 (E.D.Mich.1992) should prompt this Court to preempt Colorado's ratio requirement statute. Plaintiff correctly points out that these cases are factually parallel to the present case. Both cases involve state apprenticeship ratio requirement statutes and both courts concluded that ERISA should preempt the state law. This Court concludes that these

cases have little persuasive force since both *Boise Cascade* and *Associated Builders* (relying heavily on *Boise Cascade*) apply the broad, all encompassing, preemption language used by the Supreme Court prior to *Travelers*. The Court has rejected this approach in its most recent decisions. *See De Buono*, 520 U.S. at 812, 117 S.Ct. 1747 (observing that prior attempts to construe 'relate to' were not much help). In all likelihood, the Eighth Circuit would resolve *Boise Cascade* much differently in the wake of *Travelers, Dillingham*, and *De Buono*.

The Plaintiff's hair-splitting attempt to distinguish the factual scenario in *Dillingham* from the present case prizes form over substance. In *Dillingham*, the California prevailing wage law required contractors on public projects to pay apprentices the journeyman wage rate, rather than the lower, apprentice wage rate, unless the apprentices were enrolled in a state-approved apprenticeship program. Plaintiff claims that, unlike the Colorado ratio requirement, the statute addressed in *Dillingham* did not limit the contractors' use of apprentices, or regulate the number, training or supervision of apprentices. Plaintiff's assertions are incorrect. Like the California prevailing wage law, Colorado's ratio requirement neither limits the number of apprentices a contractor may employ nor does it regulate the training of apprentices. On the contrary, electrical contractors like Plaintiff may hire and train apprentices in accordance with their established employee welfare benefit plans. At the same time, however, these contractors must maintain the one to one journeyman to apprentice jobsite ratio requirement. The only impact the ratio requirement has on Plaintiff's employee benefit plan is that complying with the ratio requirement may induce Plaintiff to choose to employ fewer apprentices and more journeymen. Since journeymen command a higher salary than apprentices, this could cost Plaintiff more money. Therefore, the

apprentice training program may have fewer participants.

This is simply an insufficient basis with which to eviscerate the Colorado ratio requirement which has existed in the same essential form since 1972. Defendants point out that the ratio requirement originally enforced through promulgated rules and Colorado State Electrical Board rulings actually predates ERISA enacted in 1974. ERISA and the ratio requirement have peacefully coexisted for over 24 years.

This Court's reasoning is supported by recent Tenth Circuit precedent. In *Fuller v. Norton*, 86 F.3d 1016, 1021 (10th Cir. 1996), the Tenth Circuit stated that "merely because state regulation might have an economic impact on a multibenefit ERISA plan, it does not automatically "relate to" an ERISA plan." The Court concluded that ERISA did not preempt the Colorado state multiple employer welfare arrangement.

The Supreme Court is resoundingly clear that *Shaw* and its progeny which promoted a broad interpretation of ERISA preemption are no longer viable.[2] Any state tax, or other law that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans. This does not mean, however, that every state law with such an effect is pre-empted by the federal statute. *De Buono*, 520 U.S. at 816, 117 S.Ct. 1747. In *Travelers*, the Court stated that " 'preemption does not occur ... if the state law has only a tenuous, remote or peripheral connection with covered plans, as is the case with many laws of general applicability.' " *Travelers*, 514 U.S. at 661, 115 S.Ct. 1671 (quoting *District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125,—n. 1, 113 S.Ct. 580, 121 L.Ed.2d 513). Colora-

do's ratio requirement is such a law of general applicability. It applies uniformly to all electrical contractors operating in the state of Colorado and it was certainly not created to thwart Plaintiff's apprenticeship training program. The ratio requirement statute makes no reference to ERISA and any relationship it may have to ERISA is at most peripheral.

The Court is thoroughly persuaded that Colorado's apprentice ratio statute does not "relate to" Plaintiff's apprenticeship training program in a manner which implicates preemption. Furthermore, it defies common sense and reason to use ERISA, a statute essentially designed to protect employees pension and benefit plans, to preempt state occupational regulation.

It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment is GRANTED as to each of Plaintiff's claims for relief. IT IS FURTHER

**ORDERED** that Plaintiff's Motion for Summary Judgment is hereby DENIED. Plaintiff's complaint is hereby DISMISSED WITH PREJUDICE. The parties shall bear their own costs.

---

2. *De Buono*, 520 U.S. at 813, 117 S.Ct. 1747 (observing that "we were quite clear in that case [*Travelers*] that the text [of ERISA] could not be read to 'extend to the furthest stretch of its indeterminacy, or for all practical pur-

poses pre-emption would never run its course, for really, universally, relations stop nowhere' ") *quoting* H. Roderick Hudson, World's Classics xli (1980).