**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 16 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILLMAR ELECTRIC SERVICE,
INC., A Minnesota Corporation,

      Plaintiff-Appellant,

v.

M. MICHAEL COOKE, as Executive
Director of Colorado Department
of Regulatory Agencies; BRUCE
DOUGLAS, as Director of the
Colorado Division of
Registrations; GEORGE
WATERHOUSE, as Program
Administrator of the Colorado
State Electrical Board;
LARRY A. DEPUTY, RICK FILSON,
KENNETH MACKEY, TIMOTHY MILLER,
BRIAN MURRAY, DONALD R. CLARK,
ROLF PHILIPSEN, ROBERT SAINT,
and TIMOTHY THOMPSON, as
Members of the Colorado State
Electrical Board,

      Defendants-Appellees.

No. 99-1221

---

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS; IBEW LOCAL
NO. 12; IBEW LOCAL NO. 68;
IBEW LOCAL NO. 113; and
IBEW LOCAL NO. 969,

      Amici Curiae.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 98-WY-939-WD)**

Lawrence W. Marquess (Darin Mackender with him on the briefs), Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Denver, Colorado, appearing for plaintiff-appellant.

Denise DeForest (Ken Salazar, Attorney General, with her on the brief), Assistant Attorney General, Business and Licensing Section, Denver, Colorado, appearing for defendants-appellees.

Terry R. Yellig, Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, D.C., and Walter C. Brauer, III, Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Denver, Colorado, filed a brief on behalf of amici curiae.

———————————

Before **BRISCOE** and **McKAY**, Circuit Judges, and **BROWN**[*], District Judge.

———————————

**BROWN**, District Judge.

———————————

The issue in this appeal is whether the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., preempts a Colorado statute requiring apprentices performing electrical work in Colorado to be supervised on a one-to-one basis by licensed journeyman electricians.  The district court held that the Colorado law was not preempted.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

———————————

[*] Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, sitting by designation.

2

I.

Plaintiff Willmar Electric Service, Inc., is a large multi-state contractor that performs work in numerous states, including Colorado. As of September 1, 1998, Willmar employed 60 journeyman electricians and 90 apprentice electricians. Willmar has established and maintains a regular training program in which all of its apprentice electricians are required to participate. The apprentices must complete a formal education program and receive practical on-the-job training and experience while working. Every apprentice is required to complete 100 hours of training and education each year. Willmar utilizes, and requires its apprentices to utilize, the "Wheels of Learning" training program, which was developed by the National Center for Construction Education and Research ("the Center"), a nonprofit organization that provides training to construction and maintenance craft workers throughout the country. The training is extensive and requires participants to pass written and performance tests to progress through the program. The training is provided by a Willmar employee or an employee of a local chapter of the Associated Builders and Contractors who has been certified as an instructor by the Center. The on-the-job training and experience in electrical work is a necessary and integral part of the program. Individuals cannot participate in the program unless they are employed in an apprentice capacity and are performing work under

3

the supervision of a journeyman electrician.

The program is funded through contributions to trust funds maintained by the Center, the Construction Education Foundation of Minnesota and the Construction Education Foundation of Wisconsin. The latter two groups are Center-accredited, nonprofit corporations that provide education and training for construction and maintenance craft workers in Minnesota and Wisconsin, respectively. The costs and expenses of operating the apprenticeship program, including all direct training expenses, are paid from the trust funds.

Willmar's apprenticeship and training program is an employee welfare benefit plan covered by ERISA. See 29 U.S.C. § 1002(1).

Colorado dictates certain standards for apprentice electricians as part of the state's regulation of professional and occupational licensing. At the time relevant to this suit, section 12-23-110.5(1) of the Colorado Revised Statutes provided:

> Any person may work as an apprentice but shall not do any electrical wiring for the installation of electrical apparatus or equipment for light, heat, or power except under the supervision of a licensed electrician. <u>The degree of supervision required shall be no more than one licensed electrician to supervise no more than one apprentice at the jobsite</u>.

C.R.S. § 12-23-110.5(1) (West 1998)[1] (emphasis added). The

---

[1] This provision was amended by the Colorado legislature in 1999 and now provides that "[t]he degree of supervision required shall be no more than one licensed electrician to supervise no more

4

defendants, as members of the Colorado State Electrical Board, are responsible for enforcing this statute.

On January 6, 1998, Willmar Electric was cited by an inspector from the Colorado State Electrical Board for violating the statute by failing to maintain a one-to-one ratio of journeyman electricians to apprentices at a jobsite. The apprentices who were working for Willmar on that project were active participants in the Willmar apprenticeship training program. Willmar subsequently filed a complaint for declaratory and injunctive relief in the U.S. District Court for the District of Colorado, asserting that the Colorado statute was preempted by ERISA and was unenforceable. The district court granted summary judgment to the defendants, finding the Colorado statute was not preempted because it "makes no reference to ERISA and any relationship it may have to ERISA is at most peripheral." Aplt. App., Exh. 13 at 10. Willmar appeals, arguing that the district court misapplied the relevant law.

We review a grant of summary judgment de novo, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c). See Richmond v. ONEOK, Inc., 120 F.3d 205, 208 (10th Cir. 1997). "Summary judgment is appropriate if 'there is no genuine issue as to any material fact and ... the moving party is entitled

---

than three apprentices at the jobsite." C.R.S. § 12-23-110.5(1) (West Group 2000). The change in the Colorado law does not appear to render the instant controversy moot because Willmar is subject to an ongoing penalty for its violation of the predecessor statute.

to a judgment as a matter of law.'" <u>Id</u>. (quoting Rule 56(c)).

II.

ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. <u>Shaw v. Delta Airlines, Inc.</u>, 463 U.S. 85, 90 (1983). Among other things, it sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility for pension benefit and welfare benefit plans. <u>Id</u>. at 91. Section 1144(a) of Title 29 U.S.C. provides that, with certain exceptions, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...."

In <u>Shaw</u> the Supreme Court said that a law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." <u>Id</u>., 463 U.S. at 96-97. The Colorado statute at issue here clearly does not make reference to[2] an ERISA plan; the preemption question thus turns on whether the statute has a "connection with" such a plan. In <u>New York State Conf. Of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.</u>, 514 U.S. 645, 656 (1995), the Court observed that "connections" with something

---

[2] A state law has "reference to" ERISA plans where it acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation. <u>California Div. Of Labor Stds. Enforcement v. Dillingham Constr., N.A., Inc.</u>, 519 U.S. 316, 325 (1997). Neither of these conditions is present in this case.

6

may be infinite, and the term therefore provides no real gauge to the scope of preemption.  Instead, the Court said it would look to the objectives of ERISA as a guide to the scope of the state law that Congress understood would survive, as well as to the effect of the state law on ERISA plans.

The principal object of ERISA is to protect plan participants and beneficiaries.  Boggs v. Boggs, 520 U.S. 833, 845 (1997.  In California Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316 (1997), the Court explained:

> "In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employee benefits from accumulated funds.  To that end, it established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator."

Id. at 326-27 (quoting Massachusetts v. Morash, 490 U.S. 107, 115 (1989)).  In Travelers the Court also observed that "[t]he basic thrust of the preemption clause ... was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."  Travelers, 514 U.S. at 657.  Because of this goal, the Court noted, in several cases ERISA had been found to preempt "state laws that mandated employee benefit structures or their administration."  Id. at 658.

Like the instant case, Dillingham, supra, dealt with a state

law's effect on an apprenticeship training program that was part of an ERISA plan. In Dillingham, a California law required contractors on public projects to pay apprentices the prevailing journeyman wage unless the apprentice was from a program approved by the state. Id., 519 U.S. at 319-20. A subcontractor who hired apprentices through an unapproved program challenged the law, arguing it was preempted by ERISA. In addressing this claim, the Supreme Court first stated that where "federal law is said to bar state action in fields of traditional state regulation ... we have worked on the 'assumption that the historic police powers of the State were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" Id at 325. The Court noted that apprenticeship training standards and the wages paid on public works had long been regulated by the States. Id. at 330. Although this fact alone would not prevent preemption, the Court concluded that the California law was far-removed from the objectives of ERISA:

> The wages to be paid on public works projects and the substantive standards to be applied to apprenticeship training programs are, however, quite remote from the areas with which ERISA is expressly concerned -- "reporting, disclosure, fiduciary responsibility, and the like." A reading of [§ 1144(a)] resulting in the pre-emption of traditionally state-regulated substantive law in those areas where ERISA has nothing to say would be "unsettling." Given the paucity of indication in ERISA and its legislative history of any intent on the part of Congress to pre-empt state apprenticeship training standards, or

8

> state prevailing wage laws that incorporate them, we are reluctant to alter our ordinary "assumption that the historic police powers of the State were not to be superseded by the Federal Act."

Id. at 330-31 (citations omitted). Thus, the apprentice wage law did not regulate an area that Congress intended ERISA to cover. As for the effects of the law, the Court noted that it did not bind ERISA plans to anything because a contractor could still hire apprentices from an unapproved program -- it just had to pay a higher wage. Thus, "the effect of [the law] on ERISA apprenticeship programs ... is merely to provide some measure of economic incentive to comport with the State's requirements...." Id. at 332. In this respect, the Court said, the law was "no different from myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate." Id. at 334 (quoting Travelers, supra).

### III.

As Dillingham pointed out, apprenticeship training standards are matters traditionally regulated by the States. The Colorado statute at issue in this case falls within that sphere. The appropriate degree of supervision required for apprentices performing electrical work is a matter related to occupational and public safety and, as such, has traditionally been subject to the state's police powers. Cf. DeBuono v. NYSA-ILA Med. & Clinical Serv. Fund, 520 U.S. 806, 814 (1997) (the historic police powers of

9

the State include the regulation of matters of health and safety). The subject of the Colorado law, like the California statute in Dillingham, is outside the area of ERISA's concerns -- i.e., reporting, disclosure and fiduciary requirements put in place to protect employee benefits. Nothing in ERISA's legislative history suggests that Congress intended to preempt apprenticeship training standards. Dillingham, 519 U.S. at 331.

Despite these factors, Willmar advances several reasons why it believes the Colorado statute should be preempted. First, it points out that other courts have found similar ratio requirements to be preempted. Citing Boise Cascade Corp. v. Peterson, 939 F.2d 632 (8th Cir. 1991) and Associated Builders and Contractors v. Perry, 817 F.Supp. 49 (E.D. Mich. 1992). We agree with the district court, however, that these cases are not persuasive because they preceded the Supreme Court's delineation of the limits of ERISA preemption in cases such as Travelers, Boggs, Dillingham, and DeBuono. Although Willmar correctly points out that the Supreme Court has not overruled its early ERISA precedents (including those upon which Boise Cascade and Associated Builders were based), a proper assessment of ERISA preemption now must take into account the limits recently recognized by the Court. Cf. DeBuono, 520 U.S. at 812-13 (criticizing court of appeals for adhering to expansive interpretation of "relate to" and failing to give effect to Travelers' rejection of a strictly literal reading).

10

Dillingham is particularly instructive here insofar as it suggests that ERISA's objectives are not interfered with by state regulation of substantive apprentice training standards. Boise Cascade and Associated Builders did not take these limits into account, and we cannot consider them to be reliable authorities on the question presented.

Willmar next argues that the Colorado law "relates to" an ERISA plan because the one-to-one ratio requirement "results in an artificial limit on the number of apprentices that may be trained...." Aplt. Br. at 14. There is no direct restraint in the Colorado law on the number of apprentices that may be trained. Rather, the limit to which Willmar refers is the economic burden of requiring one-to-one supervision of apprentices. The Supreme Court has recognized that laws of general applicability inevitably affect ERISA plans, sometimes by increasing costs, but that fact alone does not warrant a finding that Congress necessarily intended to displace regulation of an area traditionally regulated by the States. Thus, in Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825 (1998), the Court held that ERISA did not preempt a general state garnishment statute despite the fact that the law's application imposed increased administrative costs and burdens on benefit plans. Similarly, in Travelers, the Court found no preemption of a state law that imposed a surcharge on patients with certain kinds of insurance, despite the fact that the law increased

11

the cost of benefits under some ERISA plans.  See Travelers, 514 U.S. at 662.  And in Dillingham the Court found that the economic effect of a state law governing apprentice wages was not a sufficient basis for preemption.  We see no material difference between these cases and the instant case, and we likewise conclude that the economic effect of the Colorado ratio requirement is not sufficient to warrant preemption.

Willmar also contends the Colorado law should be preempted because it invades the federal province of benefit plans and improperly "dictates to the contractor the 'teacher-to-student' ratio that must be used in the apprenticeship program...." Aplt. Br. at 14.  An examination of the objectives of ERISA and the effects of the Colorado law persuades us that this is not the type of regulation Congress had in mind in the preemption clause.  The primary effect of the ratio requirement is to indirectly increase the cost of apprentice training.  In this respect it is directly analogous to the apprentice wage law at issue in Dillingham.[3]  In requiring such supervision the Colorado law neither mandates nor

_____

[3]  Willmar argues Dillingham is factually distinguishable because the state law in that case "did not bind ERISA plans to anything."  See Dillingham, 519 U.S. at 332.  We cannot agree that this purported distinction warrants a different result in this case.  In Dillingham if the contractor chose to hire an apprentice from a non-approved program, it was compelled by state law to pay journeyman's wages.  In our view this is comparable to the manner in which the Colorado law affects the Willmar training program -- it does not prevent training, but it increases the cost associated with doing so.

12

limits the granting of benefits to employees.  Cf. Travelers, 514 U.S. at 664 (the law did "not impose the kind of substantive coverage requirement binding plan administrators that was at issue in Metropolitan Life.").  The law is neutral in that it applies with equal force to ERISA and non-ERISA plan training of apprentices.  Its subject matter falls within the apprenticeship training standards traditionally regulated by state law.  All factors considered, we cannot accept Willmar's argument that the Colorado law encroaches upon the subject of welfare benefit plan regulation.  It is more properly characterized as addressing occupational and public safety, a matter traditionally governed by state law.  We find it implausible that Congress could have intended for such a regulation to be superseded by ERISA merely because its application has some impact on an ERISA plan.  See Dillingham, supra.  Cf. Shea v. Esensten, ___ F.3d ___, 2000 WL 336674, *6 (8th Cir., Mar. 31, 2000) (state regulation of ethical responsibilities of physicians was not preempted by ERISA); Boyle v. Anderson, 68 F.3d 1093, 1110 (8th Cir. 1995) (nothing in ERISA indicates Congressional intent to preempt state's general heath care regulations).

Willmar's final argument is that preemption is required because the Colorado law interferes with uniform administration of benefit plans. Willmar points out that various states have varying laws on the degree of supervision required for apprentices.  The

13

result of this, according to Willmar, is that it is "forced either to restructure its apprenticeship and training program to comply with the most stringent applicable ratio requirement or adopt a different program for use in each state."  Aplt. Rep. Br. at 8. Willmar argues this is contrary to Congress' intent in the ERISA preemption clause "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law," to "minimize the administrative and financial burden of complying with conflicting directives among States," and to prevent conflicts in substantive law from "requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." See Travelers, 514 U.S. at 656-57.  Although it is true that different apprentice supervision standards may have some effect on administration of Willmar's benefit plan, we cannot say this is enough to overcome the presumption that Congress did not intend to supersede state regulation of this area of law.  A similar effect on uniform plan administration would assuredly arise from the apprentice wage law in Dillingham and the state tax at issue in DeBuono, but the Supreme Court found no grounds for preemption in those cases.  We conclude that the Colorado law is "one of 'myriad state laws' of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute."  DeBuono, 138 L.Ed.2d at 30.  See also Travelers, 514 U.S. at 661 (there is no

14

preemption "if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability").  ERISA therefore does not preempt the Colorado apprentice supervision requirement.

IV.

The judgment of the district court is AFFIRMED.

15