Justice BREYER, concurring.
I write separately to emphasize that a failure to find pre-emption here would subject self-insured health plans under the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001 et seq., to 50 or more potentially conflicting information reporting requirements. Doing so is likely to create serious administrative problems. The Court points out that the respondent's plan provides benefits to over 80,000 individuals living in 50 different States. See ante, at 941 - 942. In addition, amici curiae tell us that self-insured, ERISA-based health plans provide benefits to 93 million Americans. Brief for American Benefits Council et al. as Amici Curiae 8. If each State is free to go its own way, each independently determining what information each plan must provide about benefits, the result could well be unnecessary, duplicative, and conflicting reporting requirements, any of which can mean increased confusion and increased cost. Private standard setting can of course help alleviate these problems, but given the large number of different possible regulations, I do not believe that is sufficient. Cf. A. Costello & M. Taylor, APCD Council & NAHDO, Standardization of Data Collection in All-Payer Claims Databases 3-4 (Jan. 2011), online at https://www.apcdcouncil.org/publication/standardization-data-collection-all-payer-claims-databases (as last visited Feb. 26, 2016).
I would also emphasize that pre-emption does not necessarily prevent Vermont or other States from obtaining the self-insured, ERISA-based health-plan information that they need. States wishing to obtain information can ask the Federal Government for appropriate approval. As the majority points out, the "Secretary of Labor has authority to establish additional reporting and disclosure requirements for ERISA plans." Ante, at 944; see 29 U.S.C. § 1135. Moreover, the Secretary "is authorized to undertake research and surveys and in connection therewith to collect, compile, analyze and publish data, information, and statistics relating to employee benefit plans, including retirement, deferred compensation, and welfare plans." § 1143(a)(1). At least one other important statute provides the Secretary of Health and Human Services with similar authority. See 42 U.S.C. § 300gg-17(a) (part of the Patient Protection and Affordable Care Act that is applicable to group health insurance plans including ERISA plans); Brief for United States as Amicus Curiae 4 (the Department of Labor, the Department of Health and Human Services, and the Department of Treasury are "currently considering a rulemaking to require health plans to report more detailed information about various aspects of plan administration, such as enrollment, claims processing, and benefit offerings").
I see no reason why the Secretary of Labor could not develop reporting requirements *950 that satisfy the States' needs, including some State-specific requirements, as appropriate. Nor do I see why the Department could not delegate to a particular State the authority to obtain data related to that State, while also providing the data to the Federal Secretary for use by other States or at the federal level.
Although the need for federal approval or authorization limits to some degree the States' power to obtain information, requiring that approval has considerable advantages. The federal agencies are more likely to be informed about, and to understand, ERISA-related consequences and health-care needs from a national perspective. Their involvement may consequently secure for the States necessary information without unnecessarily creating costly conflicts-particularly when compared with such alternatives as giving each State free rein to go its own way or asking nonexpert federal courts to try to iron out, regulation by regulation, such conflicts. Cf. Medtronic, Inc. v. Lohr, 518 U.S. 470, 506, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (BREYER, J., concurring in part and concurring in judgment) (reading a complex, ambiguous regulatory statute to permit "informed agency involvement" is more likely to achieve Congress' general objectives).
For these reasons, and others that the majority sets forth, I agree that Vermont's statute is pre-empted because it "interferes with nationally uniform plan administration." Egelhoff v. Egelhoff, 532 U.S. 141, 148, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001).
Justice GINSBURG, with whom Justice SOTOMAYOR joins, dissenting.
To better control health care outcomes and costs, Vermont requires all public and private entities that pay for health care services provided to Vermont residents to supply data to the State's all-payer claims database. Many States have similar databases in place or in development. The question presented in this case is whether Vermont's health care data-collection law is preempted by the Employer Retirement Income Security Act of 1974 (ERISA), 88 Stat. 832, 29 U.S.C. § 1001 et seq., the federal law regulating employee benefit plans. I would hold that Vermont's effort to track health care services provided to its residents and the cost of those services does not impermissibly intrude on ERISA's dominion over employee benefit plans.
I
In 2005, the Vermont Legislature established the Vermont Health Care Uniform Reporting and Evaluation System, a database populated by information on health care claims paid by insurers and other coverage providers. See Vt. Stat. Ann., Tit. 18, § 9410 (2015 Cum. Supp.); Reg. H-2008-01, Code Vt. Rules 21-040-021, § 4(D) (2016) (directing insurers and other coverage providers to "submit medical claims data, pharmacy claims data, member eligibility data, provider data, and other information related to health care provided to Vermont residents and health care provided by Vermont health care providers and facilities"). Health insurers and other coverage providers must report the required data if they cover at least 200 Vermont residents. § 3(Ab).
Seventeen other States have enacted similar database systems, called "all-payer claims databases."[1] These States, like *951 Vermont, collect health-claims data to serve compelling interests, including identification of reforms effective to drive down health care costs, evaluation of relative utility of different treatment options, and detection of instances of discrimination in the provision of care. See Brief for National Governors Association et al. as Amici Curiae 11-14; Brief for Harvard Law School Center for Health Law and Policy Innovation et al. as Amici Curiae 11-18; Brief for State of New York et al. as Amici Curiae 12-20. See also Vt. Stat. Ann., Tit. 18, § 9410(a)(1) (Vermont's data-collection law is designed to help "identif[y] health care needs and infor[m] health care policy," "evaluat[e] the effectiveness of intervention programs on improving patient outcomes," "compar [e] costs between various treatment settings and approaches," "determin[e] the capacity and distribution of existing resources," and "provid[e] information to ... purchasers of health care").[2]
Respondent Liberty Mutual Insurance Company (Liberty), in common with legions of employers, provides health care to its employees through a self-insured plan, administered by Blue Cross/Blue Shield (Blue Cross).[3] Because Blue Cross administers thousands of health care policies in Vermont, the State requires it to report data for all of the plans it administers, and Blue Cross has complied with this mandate. In 2010, for example, Blue Cross reported data on over 7,000 Vermont health care-plan beneficiaries. Roughly half of the beneficiaries received coverage through self-insured employer policies. App. 205. In 2011, at Liberty's request, Blue Cross did not submit data on Vermont residents who received coverage through Liberty's plan. Id ., at 21-23. Vermont ordered Blue Cross to provide the claims data. Id., at 23, 31-33. Liberty instructed Blue Cross not to comply and, shortly thereafter, filed the instant suit, seeking to block Vermont from obtaining the data.
In defense of its resistance to Vermont's data-collection law, Liberty relies on its plan's status as an ERISA-covered "employee welfare benefit plan," defined as "any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness." 29 U.S.C. § 1002(1). Because ERISA directs plan fiduciaries to conserve plan assets for the purpose of "providing benefits to participants," § 1104(a)(1)(A)(ii), Liberty maintains that ERISA preempts diverse state health-claims reporting laws. If there is to be mandatory health-claims reporting by ERISA plans, Liberty urges, the source of the mandate should be a uniform national reporting regime. See Brief for Respondent 26-29; Tr. of Oral Arg. 32-33.
Opposing ERISA-grounded preemption of its data-collection law, Vermont points out that the efficacy of the State's law depends on comprehensive reporting, i.e., *952 collecting data on numerous beneficiaries from each of several major segments of the health care market. See Brief for Petitioner 12; Brief for Harvard Law School Center for Health Law and Policy Innovation et al. as Amici Curiae 18-19.[4] About half of Americans with health insurance receive coverage from their employers, Dept. of Commerce, Bureau of Census, J. Smith & C. Medalia, Health Insurance Coverage in the United States: 2013, p. 2 (2014), and 61% of such persons are covered by an employer's self-insured plan. Brief for Harvard Law School Center for Health Law and Policy Innovation et al. as Amici Curiae 20. In Vermont, about 20% of the database's total content originates from employer self-insured plans. Brief for Petitioner 12, and n. 10. Stopping States from collecting claims data from self-insured employer health care plans would thus hugely undermine the reporting regimes on which Vermont and other States depend to maintain and improve the quality, and hold down the cost, of health care services.
The United States District Court for the District of Vermont rejected Liberty's plea for preemption. Vermont's data-collection law, that court determined, served the State's undoubted interest in regulating health care markets, and did not substantially interfere with the operation of Liberty's ERISA plans. See App. to Pet. for Cert. 64-66, 78-79. The Court of Appeals for the Second Circuit reversed, two to one. Liberty Mut. Ins. Co. v. Donegan, 746 F.3d 497 (2014). The majority acknowledged that the Supreme Court's ERISA-preemption decisions of the 1990's "marked something of a pivot" in starting with a presumption " 'that Congress does not intend to supplant state law,' especially if the 'state action [occurs] in fields of traditional state regulation,' like health care." Id., at 506 (quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654-655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) ). Nonetheless, the majority concluded that ERISA preempted the application of Vermont's data-collection law to Liberty's plan. 746 F.3d, at 506, 508. The reporting of information about plan benefits, the majority reasoned, qualifies as a "core ERISA functio[n]" and, therefore, must be "subject to a uniform federal standard." Id., at 505, 508. Judge Straub dissented, offering a concise critique of the majority's opinion:
"The majority finds that the burden imposed by the Vermont reporting requirement warrants preemption of the [data-collection] statute. This conclusion falters for two primary reasons. First, the reporting requirement imposed by the Vermont statute differs in kind from the 'reporting' that is required by ERISA and therefore was not the kind of state law Congress intended to preempt. Second, Liberty Mutual has failed to show any actual burden, much less a burden that triggers ERISA preemption. Rather, the Vermont statute ... does not interfere with an ERISA plan's administration of benefits." Id., at 511.
II
Essentially for the reasons Judge Straub identified, I would hold that ERISA does not preempt Vermont's data-collection statute. That law and ERISA
*953 serve different purposes. ERISA's domain is the design and administration of employee benefit plans: notably, prescriptions on the vesting of benefits, claims processing, and the designation of beneficiaries. See Travelers, 514 U.S., at 656, 115 S.Ct. 1671 ("Congress intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law...." (internal quotation marks omitted)). Its reporting requirements, geared to those functions, ensure that the plans in fact provide covered benefits. Vermont's data-collection statute, in contrast, aims to improve the quality and utilization, and reduce the cost, of health care in Vermont by providing consumers, government officials, and researchers with comprehensive data about the health care delivery system. Nor does Vermont's law impose burdens on ERISA plans of the kind this Court has found sufficient to warrant preemption.
ERISA's preemption clause provides that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Lacking clear direction from the clause's "opaque" text, De Buono v. NYSA-ILA Medical and Clinical Services Fund, 520 U.S. 806, 809, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997), the Court has sought to honor Congress' evident call for an expansive preemption principle without invalidating state regulations falling outside ERISA's domain. See Travelers, 514 U.S., at 655-656, 115 S.Ct. 1671 ("The governing text of [the] ERISA [preemption clause] is clearly expansive.... [But] [i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere." (some internal quotation marks omitted)).[5]
Seeking to bring some measure of determinacy to ERISA preemption, the Court has stated: "[A] law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." Id., at 656, 115 S.Ct. 1671 (some internal quotation marks omitted). In this case, the Court of Appeals found, and the parties do not here contest, that Vermont's data-collection law lacks "reference to" ERISA plans because the law applies to all health care payers and does not home in on ERISA plans. See 746 F.3d, at 508, n. 9. The question, therefore, is whether the law has an impermissible "connection with" ERISA plans. Because the term " 'connection with' is scarcely more restrictive than 'relate to,' " the Court has "cautioned against ... uncritical literalism," Egelhoff v. Egelhoff, 532 U.S. 141, 147, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (internal quotation marks omitted), and has set out this further formulation: "[T]o determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." Ibid. (internal quotation marks omitted).
*954 In framing preemption doctrine, the Court does not "assum[e] lightly that Congress has derogated state regulation, but instead ... addresse[s] claims of pre-emption with the starting presumption that Congress does not intend to supplant state law," Travelers, 514 U.S., at 654, 115 S.Ct. 1671 especially where the State's regulation deals with "matters of health and safety," De Buono, 520 U.S., at 814, 117 S.Ct. 1747 (internal quotation marks omitted). In Travelers and subsequent decisions upholding state laws against preemption challenges, this Court made clear that this presumption plays an important role in ERISA cases. Travelers, 514 U.S., at 654, 661, 115 S.Ct. 1671 ; California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 325, 330-331, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) ; De Buono, 520 U.S., at 814, 117 S.Ct. 1747. Vermont's data-collection law is a vital part of the State's control of its own health care market. See supra, at 950 - 951, 951 - 952; 746 F.3d, at 513 (Straub, J., dissenting). The presumption against preemption should thus apply full strength, and Liberty has not rebutted it, i.e., it has not shown that ERISA demands the preemption of Vermont's data-collection law. To the contrary, the Court's ERISA preemption precedent points against preemption in this case.
A
To determine whether Vermont's data-collection law, as applied to Liberty's plan, has an impermissible "connection with" ERISA plans, I look first to the "objectives of the ERISA statute as a guide." Egelhoff, 532 U.S., at 147, 121 S.Ct. 1322 ; Oneok, Inc. v. Learjet, Inc., 575 U.S. ----, ----, 135 S.Ct. 1591, 1599, 191 L.Ed.2d 511 (2015) (emphasizing "the importance of considering the target at which the state law aims " in applying ordinary field-preemption principles). Because ERISA's reporting requirements and the Vermont law elicit different information and serve distinct purposes, there is no sensible reason to find the Vermont data-collection law preempted.
ERISA-covered benefit plans must, absent exemption, file annual reports containing financial and actuarial data to enable the Secretary of Labor to evaluate plans' management and solvency. See 29 U.S.C. §§ 1023, 1024(a)(2)(B) ; Dillingham, 519 U.S., at 326-327, 117 S.Ct. 832 (Congress "established extensive reporting ... requirements" to protect against "the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees' benefits from accumulated funds." (internal quotation marks omitted)).[6]
Beyond debate, Vermont's data-collection law does not seek to regulate the management and solvency of ERISA-covered welfare plans. See supra, at 950 - 951 (reciting objectives of the Vermont data-collection law). Vermont requests no *955 information on plan finances. See Reg. H-2008-01, Code of Vt. Rules 21-040-021, § 4(D); supra, at 950 - 951 (detailing the types of data collected by Vermont). The State collects data on paid health care claims, not denied claims. See § 5(A)(8). Vermont seeks a better understanding of how its residents obtain health care and how effective that care is. Unlike ERISA superintendence, Vermont's interest does not lie in reviewing whether a self-insured provider is keeping its bargain to covered employees. Nor does Vermont's statute even arguably regulate relationships among the prime ERISA entities: beneficiaries, participants, administrators, employees, trustees and other fiduciaries, and the plan itself.
Despite these significant differences between ERISA's reporting requirements and Vermont's data-collection regime, Liberty contends that Congress intended to spare ERISA plans from benefit-related reporting requirements unless those requirements are nationally uniform. In support of this contention, Liberty points to dicta from this Court's opinions and selections from ERISA's legislative history. See, e.g., Travelers, 514 U.S., at 661, 115 S.Ct. 1671 (" '[S]ubject matters covered by ERISA [include] reporting, disclosure, fiduciary responsibility, and the like.' " (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) )); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (ERISA "sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans."); 120 Cong. Rec. 29942 (1974) (remarks of Sen. Javits) ("State laws compelling disclosure from ... plans ... will be superseded."). Far from unambiguously endorsing Liberty's sweeping view of ERISA's preemptive scope, these statements can be read at least as reasonably for the unremarkable principle that ERISA preempts state reporting rules designed to serve the same purposes as ERISA's reporting requirements. This more limited understanding is consistent with the Court's admonition to pay close attention to the "objectives of the ERISA statute as a guide." Egelhoff, 532 U.S., at 147, 121 S.Ct. 1322.
B
Satisfied that ERISA's objectives do not require preemption of Vermont's data-collection law, I turn to the "nature of the effect of the state law on ERISA plans." Ibid . The imposition of some burdens on the administration of ERISA plans, the Court has held, does not suffice to require preemption. See De Buono, 520 U.S., at 815, 117 S.Ct. 1747. While a law imposing costs so acute as to effectively dictate how a plan is designed or administered could trigger preemption, see id., at 816, n. 16, 117 S.Ct. 1747 no such extreme effects are present here. Moreover, no "central matter of plan administration," Egelhoff, 532 U.S., at 148, 121 S.Ct. 1322 is touched by Vermont's data-collection law. That law prescribes no vesting requirements, benefit levels, beneficiary designations, or rules on how claims should be processed or paid. Indeed, Vermont's law does not require Liberty to do anything. The burden of compliance falls on Blue Cross, which apparently provides the data without protest on behalf of other self-funded plans. See supra, at 951.
Reporting and disclosure are no doubt required of ERISA plans, but those requirements are ancillary to the areas ERISA governs. Reporting and recordkeeping incident to state laws of general applicability have been upheld as they bear on ERISA plans. In De Buono, 520 U.S., at 809-810, 816, 117 S.Ct. 1747 for example, the Court held that a gross-receipts *956 tax on patient services provided by a hospital operated by an ERISA plan was not preempted, even though administration of the tax required filing quarterly reports. And in Dillingham, 519 U.S., at 319, 117 S.Ct. 832 the Court held that California's prevailing-wage law was not preempted as applied to apprenticeship programs established by ERISA plans. Prevailing-wage laws typically require employees to keep records of the wages paid to employees and make them available for review by state authorities. See, e.g., Cal. Lab. Code Ann. § 1776 (West 1989) (prevailing-wage law in Dillingham ). The Second Circuit erred, then, in holding that ERISA preempts any state-law reporting obligation that is more than "slight." See 746 F.3d, at 508-509.
The Vermont data-collection statute keeps company with the laws considered in De Buono and Dillingham : It is generally applicable and does not involve "a central matter of plan administration." Egelhoff, 532 U.S., at 148, 121 S.Ct. 1322. And, as Judge Straub emphasized in his dissent, Liberty "failed to provide any details or showing of the alleged burden," instead "arguing only that 'all regulations have their costs.' " 746 F.3d, at 515 (quoting Liberty's appellate brief).
As the United States explains, the supposition indulged by the Second Circuit that Vermont's law imposed a substantial burden "is not obvious, or even particularly plausible, without any factual support." Brief for United States as Amicus Curiae 28. The data-collection law "essentially requires Blue Cross [Liberty's third-party administrator] to take information generated in the ordinary course of its claims-payment operations and report that information in a prescribed format to the [State]." Ibid. The Court of Appeals majority accentuated the sheer number of data entries that must be reported to Vermont. See 746 F.3d, at 509-510, and n. 13. Accord ante, at 949 (opinion of BREYER, J.) Entirely overlooked in that enumeration is the technological capacity for efficient computer-based data storage, formatting, and submission. See Brief for National Association of Health Data Organizations et al. as Amici Curiae 7-9, 13 (describing three-step electronic path data take from health provider, to insurer or health care plan, and ultimately to the State's database).[7] Where regulatory compliance depends upon the use of evolving technologies, it should be incumbent on the objector to show concretely what the alleged regulatory burden in fact entails.[8]
Because data-collection laws like Vermont's are not uniform from State to State, compliance is inevitably burdensome, *957 Liberty successfully argued in the Court of Appeals. The Court replays this reasoning in today's opinion. See ante, at 943 - 944, 945. But state-law diversity is a hallmark of our political system and has been lauded in this Court's opinions. See, e.g., Arizona State Legislature v. Arizona Independent Redistricting Comm'n, 576 U.S. ----, ----, 135 S.Ct. 2652, 2673, 192 L.Ed.2d 704 (2015) ( "This Court has long recognized the role of States as laboratories for devising solutions to difficult legal problems." (citing New State Ice Co. v. Liebmann, 285 U.S. 262, 311, 52 S.Ct. 371, 76 L.Ed. 747 (1932) (Brandeis, J., dissenting); internal quotation marks omitted)). Something more than an inherent characteristic of our federal system, therefore, must underpin the ERISA-grounded preemption Liberty urges.[9]
Liberty points to Egelhoff as exemplary. In Egelhoff, 532 U.S., at 143-144, 121 S.Ct. 1322 a deceased ERISA-plan participant's ex-spouse challenged a state law that revoked her beneficiary status automatically upon her divorce, even though the ERISA plan's terms did not. The Court held that ERISA preempted the law because it "binds ERISA plan administrators to a particular choice of rules for determining beneficiary status." Id., at 147, 121 S.Ct. 1322. In that context, the Court said: "Requiring ERISA administrators to master the relevant laws of 50 States ... would undermine the congressional goal of minimizing the administrative and financial burdens on plan administrators-burdens ultimately borne by the beneficiaries." Id., at 149-150, 121 S.Ct. 1322 (internal quotation marks and brackets omitted).
The Court took care, however, to confine Egelhoff to issues implicating "a central matter of plan administration," in other words, "a core ERISA concern." Id., at 147-148, 121 S.Ct. 1322. What does that category comprise? As earlier described, see supra, at 952 - 953, 955 - 956, prescriptions on benefit levels, beneficiary designations, vesting requirements, and rules on processing and payment of claims would rank under the central or core ERISA subject-matter rubric.[10] So, too, would reporting *958 and disclosure obligations, but of what kind? Those that further regulation of the design and administration of employee benefit plans, i.e., reporting and disclosures tied to the areas ERISA governs. ERISA's reporting and disclosure requirements are thus concerned with mismanagement of funds, failure to pay employee benefits, plan assets or allocations, all information bearing on the financial integrity of the plan. See supra, at 944 - 945. Vermont's data-collection law, eliciting information on medical claims, services provided to beneficiaries, charges and payment for those services, and demographic makeup of those receiving benefits, does not fit the bill any more than reporting relating to a plan's taxes or wage payments does.
Numerous States have informed the Court of their urgent need for information yielded by their health care data-collection laws. See Brief for National Governors Association et al. as Amici Curiae ; Brief for State of New York et al. as Amici Curiae ; Brief for Connecticut Health Insurance Exchange as Amicus Curiae ; Brief for State of New Hampshire as Amicus Curiae . Wait until the Federal Government acts is the Court's response. The Department of Labor's capacious grant of statutory authority, the Court observes, might allow it to collect the same data Vermont and other States seek about ERISA plan health-benefit payments. See ante, at 945; ante, at 949 - 950 (opinion of BREYER, J.). Once the information is collected, the Court conjectures, the Department could pass the data on to the States. Cf. ante, at 949 - 950 (opinion of BREYER, J.) (suggesting that States could seek the Department's permission to enforce reporting requirements like Vermont's). It is unsettling, however, to leave the States dependent on a federal agency's grace, i.e., the Department of Labor's willingness to take on a chore divorced from ERISA's objectives.[11]
Declaring "reporting," unmodified, a central or core ERISA function, as the Second Circuit did, 746 F.3d, at 508, passes the line this Court drew in Travelers, De Buono, and Dillingham when it reined in § 1144(a) so that it would no longer operate as a "super-preemption" provision. Bogan, Protecting Patient Rights Despite ERISA, 74 Tulane L. Rev. 951, 959 (2000) ; see supra, at 944. I dissent from the Court's retrieval of preemption doctrine that belongs in the discard bin.

States, in addition to Vermont, so far maintaining all-payer claims databases are: Arkansas, Colorado, Connecticut, Kansas, Maine, Maryland, Massachusetts, Minnesota, New Hampshire, New York, Oregon, Rhode Island, Tennessee, Utah, Virginia, Washington, and West Virginia. Brief for National Governors Association et al. as Amici Curiae 8, and n. 9.

Illustrative of the utility of all-payer claims databases, Minnesota evaluated data on emergency-room visits and concluded that the condition causing two of every three visits could have been treated more efficiently, and as effectively, in a nonhospital setting. Brief for State of New York et al. as Amici Curiae 12-13.

Liberty's plan would not, on its own, trigger Vermont's reporting requirements. As of 2011, only 137 plan participants resided in the State, out of the total 84,711 individuals covered by Liberty's plan. App. to Pet. for Cert. 50.

The Federal Government supplies Medicare claims data to Vermont and other States that maintain similar databases. See 42 U.S.C. § 1395kk(e) (requiring the Department of Health and Human Services (HHS) to make Medicare data available to state health-claims databases). And HHS has authorized the States to include Medicaid claims data in their databases. See Brief for United States as Amicus Curiae 7.

I have joined opinions proposing that the Court acknowledge that the " 'relate to' clause of the pre-emption provision is meant, not to set forth a test for pre-emption, but rather to identify the field in which ordinary field pre-emption applies-namely, the field of laws regulating" employee-benefit plans. California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 336, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (SCALIA, J., concurring); Egelhoff v. Egelhoff, 532 U.S. 141, 153, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (SCALIA, J., concurring). Whether measured against ordinary preemption principles or this Court's ERISA-specific precedent, Vermont's data-collection law should survive inspection.

The Court suggests that the Department of Labor collects, pursuant to ERISA's reporting rules, similar information to the data that Vermont's regime elicits. See ante, at 954. But these reporting obligations are not remotely similar. As one of Liberty's amici curiae explains, the Department of Labor reporting form cited by the Court requires reporting of the "total amount of claims paid annually by the plan," not the "granular claim-by-claim" information (including data about the "location of services rendered") that Vermont collects. Brief for National Coordinating Committee for Multiemployer Plans as Amicus Curiae 15, n. 4. See also Reply Brief 13, and n. 6. The data entries cited by the Court require a plan to enter, in merely a handful of boxes on a four-page form, the aggregate sums of all claims paid annually. See Dept. of Labor, Schedule H (Form 5500) Financial Information (2015), online at http://www.dol.gov/ebsa/pdf/2015-5500-Schedule-H.pdf (all Internet materials as last visited Feb. 24, 2016).

Amici supporting Liberty point to several allegedly burdensome features of compliance with Vermont's law, but they appear to be no more than everyday facets of modern regulatory compliance: installing and maintaining a software system to collect and remit data to the State, seeking variances from state regulators when health providers do not submit required information to the plan or its administrator, and reformatting data to comply with state-database formatting and encryption standards. See Brief for Blue Cross and Blue Shield Association as Amicus Curiae 30-32, and nn. 7-8; Brief for National Coordinating Committee for Multiemployer Plans as Amicus Curiae 11-13, 16-18.

Liberty contends that it need not quantify the precise cost of compliance with Vermont's law to prove that the law is burdensome. But Liberty should at least introduce concrete evidence of the alleged burdens. A finder of fact would reasonably ask, for example: Do Blue Cross's existing technologies for data storage already have capacity to store and report the data sought by Vermont? And is compliance with Vermont's reporting rules any more burdensome than compliance with other state reporting laws with which the plan already complies?

Concurring in the Court's opinion, Justice BREYER worries that "[i]f each State is free to go its own way, ... the result could well be unnecessary, duplicative, and conflicting reporting requirements." Ante, at 949. In support, Justice BREYER cites a 2011 report. A. Costello & M. Taylor, APCD Council & NAHDO, Standardization of Data Collection in All-Payer Claims Databases 1 (Jan. 1 online 2011), at https://www.apcdcouncil.org/publication/standardization-data-collection-all-payer-claims-databases. In fact, the organizations that published this report inform us, in a brief supporting Vermont, that "submitting claims data to [all-payer claims databases] ... is a routine, straightforward process" and that States and private organizations have worked in recent years to standardize data-reporting requirements. Brief for National Association of Health Data Organizations et al. as Amici Curiae 13.

The "core ERISA concern" (or "central matter of plan administration") inquiry is not meaningfully different from the examination whether a state law is inconsistent with the "objectives of the ERISA statute." Egelhoff, 532 U.S., at 147, 121 S.Ct. 1322 ; see supra, at 954 - 955. The Court appears to disagree, stating that "[a]ny difference in purpose" between ERISA and Vermont's reporting requirements "does not transform [Vermont's] direct regulation of a 'central matter of plan administration' into an innocuous and peripheral set of additional rules." Ante, at 946 (quoting Egelhoff, 532 U.S., at 148, 121 S.Ct. 1322 ). In other words, the Court assumes that a state law that is not inconsistent with ERISA's purposes can nonetheless burden a "central matter of plan administration" or implicate a "core ERISA concern." Missing from the Court's opinion is any definition of these terms. What meaning can "central matter of plan administration" and "core ERISA concern" have if they are divorced from ERISA's purposes?

The Court's analysis may hamper States' abilities to require reporting, not just of plan benefits, but of plan assets as well. For example, the Department of Labor collects information about real property held in trust by a pension plan so that it can assess the plan's financial well-being. See Tr. of Oral Arg. 19. States may need to collect the same information for a very different purpose, such as assessing a property tax.
* * *